[No. 23157–0–I. Division One. January 22, 1990.]

KIRBY JOHNSON, *as Personal Representative, Appellant,* v. J.P. REEHOORN, ET AL, *Respondents.*

*Steven W. Hale, Anne F. Ackenhusen,* and *Peter D. Byrnes,* for appellant.

*Richard L. Martens,* for respondents.

SCHOLFIELD, J.—The personal representative of an estate appeals a summary judgment order which dismissed his causes of action against an accountant[1] on the basis that the complaint was filed after the 3–year statute of limitations had run. We reverse.

## FACTS

Curtis H. Johnson died on October 12, 1981. His son, Kirby Johnson, was appointed as the personal representative of the estate, and he hired Gilbert E. Mullen, an attorney, to probate the estate. Mullen told Johnson that he did not do federal estate tax returns. Mullen hired Reehoorn, a certified public accountant, to help out with the taxes. Shortly before July 12, 1982, when the federal estate tax return was due, Mullen called Johnson and advised him that the returns might be filed late. When Johnson stated

---

[1]Gilbert E. Mullen and wife were also named as defendants, but have been dismissed from the action and are not involved in this appeal.

his desire to have the returns filed on time, Mullen advised him of Reehoorn's opinion that the consequences of filing late would be only $100 to $200 penalty. The attorney also advised Johnson that the late filing would not cost him anything because either Mullen or Reehoorn would take care of the late filing penalty. The federal estate and state inheritance tax returns were not mailed by Mullen until July 23, 1982, 11 days after they were due.

On September 6, 1982, the IRS issued a request for payment which indicated that the total tax on the return was $2,304 and which credited the tax payment but assessed a $115.20 penalty for late filing. Johnson learned of the penalty by letter dated October 5, 1982. The widow paid the penalty with a check drawn on her personal account. Approximately a year later, by letter dated October 19, 1983, Reehoorn advised Johnson of notification by the IRS that the late filing of the estate return disqualified the "special use valuation" upon which the estate was relying for computation of the federal estate tax.[2] The estate appealed the disqualification, and by order entered in November 1987, the United States Tax Court determined that the untimeliness of the filing of the return prevented the estate from using the special use valuation; that the delay was not for reasonable cause nor was an extension requested or granted. The court assessed additional taxes of $116,195 and $5,810.

On September 25, 1986, Johnson filed a complaint on behalf of the estate against Mullen and Reehoorn. On May 19, 1988, Reehoorn moved for summary judgment of dismissal on grounds that the complaint was filed after the statute of limitations had run. On June 27, 1988, an order

---

[2] 26 U.S.C. § 2032A permits family farms and real property used in other closely held businesses to be included in the gross estate at their current use values rather than their fair market values. In the case at bar, the term "special use valuation" refers to the inclusion of certain real property in the decedent's gross estate at a valuation which reflects its current use for farming. That value is $752,681 less than the fair market value.

was entered granting Reehoorn's motion for summary judgment. The trial court based its decision on the fact that in October 1982, the estate had notice of the late filing and had been damaged to the extent of $115.20. Johnson's motion for revision was denied, and the trial court entered a final order as to Reehoorn on October 28, 1988.

 The trial court dismissed the following causes of action, having concluded the 3–year statute of limitations had run:

### FIRST CAUSE OF ACTION

. . . Defendants negligently failed to:
(a) Timely file the federal Estate Tax Return . . .;
(b) Timely file for an extension of time in which to file the federal Estate Tax Return . . .;
(c) Timely file an incomplete federal Estate Tax Return sufficient to preserve the benefit of the special use valuation . . .;
(d) File a protective election of special use valuation . . .;
(e) Determine and advise the Estate of the full consequence of the late filing of the federal Estate Tax Return.
. . . .

### THIRD CAUSE OF ACTION

. . . [Johnson] was the intended beneficiary of the contract for professional services between [Mullen and Reehoorn].
. . . The failure to timely file the federal Estate Tax Return or to take other action to preserve to the Estate the [tax] benefits . . . were breaches of that contract.

In *Peters v. Simmons,* 87 Wn.2d 400, 406, 552 P.2d 1053 (1976), the Washington Supreme Court held

that the statute of limitations for legal malpractice should not start to run until the client discovers, or in the exercise of reasonable diligence should have discovered the facts which give rise to his or her cause of action.

The discovery rule was extended to accountants "in order to protect clients who frequently do not have the means or ability to discover the perpetration upon them of professional malpractice." *Hunter v. Knight, Vale & Gregory,* 18 Wn. App. 640, 643–44, 571 P.2d 212 (1977).

Under this rule "a cause of action based on negligence accrues when the plaintiff discovers or reasonably should have discovered all of the essential elements of the negligence, *i.e.,* duty, breach, causation and damages." *Reichelt*

*v. Johns–Manville Corp.,* 107 Wn.2d 761, 769, 733 P.2d 530 (1987).

Based on the undisputed facts before us, we must determine whether reasonable persons could reach but one conclusion: that Johnson discovered or should have discovered his cause of action at the time he learned of the IRS assessment of the $115.20 penalty. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982). Reehoorn contends that when the estate became aware of the late filing penalty, it had knowledge of all the elements of the malpractice action. It knew that Mullen and Reehoorn had filed the return late and the estate had suffered damage by being assessed the penalty. Reehoorn likens the later assessment of additional taxes to an aggravation of an existing injury, urging that the facts are comparable to the facts of *Steele v. Organon, Inc.,* 43 Wn. App. 230, 716 P.2d 920 (1986). In *Steele,* the plaintiff was hospitalized for a severe migraine headache. Her doctor prescribed the drug Wigraine, containing ergot, but did not tell her that dosage should not exceed 10 to 12 tablets per week. After she began taking 8 tablets a day for headaches, the plaintiff was admitted to the hospital with ergot poisoning. Her treating physicians opined that the ergot overdose had no long–term effects. Eight years after the overdose, the plaintiff experienced a heart attack and stroke, which, according to another doctor, were related to the overdose. At that time, she filed a malpractice complaint against the pharmacy and doctor who had prescribed the drug containing ergot.

The Court of Appeals affirmed the dismissal of the action on the basis that after receiving the opinions of the physicians who treated her during the first hospitalization, the plaintiff knew all the elements of her cause of action. She knew that the pharmacy and prescribing doctor had breached their duty to warn her of the need to limit her intake of the medication and that she had suffered an injury. She had suffered actual and appreciable damages resulting from the drug overdose in that she experienced

loss of sensation in her arms and legs which required hospitalization.

The difficulty with applying *Steele* to the facts of the instant case is in comparing an injury due to accounting malpractice with one due to medical malpractice. In *Steele,* the plaintiff suffered a physical injury, the overdose, which required hospitalization and which later allegedly resulted in a heart attack and stroke. The same overdose in *Steele* allegedly resulted in damages requiring the first hospitalization and additional damages from the heart attack and stroke.

In an attempt to compare the case at bench to *Steele,* Reehoorn argues the penalty of $115.20 can be compared to Steele's initial adverse reaction to the ergot poisoning and that the estate's loss of the special use valuation option is legally comparable to Steele's heart attack and stroke. The argument has merit only to the extent that both the penalty and the loss of the special use valuation are related to the late filing of the tax return.

The *Steele* court relied upon the assertion that the stroke and heart attack were a physiological result of the overdose of Wigraine and, therefore, were an additional consequence, but not dissimilar from the initial injury and damage for which Steele was hospitalized in 1973. *Steele* is not dispositive here because of the clear differences between the $115.20 penalty for late filing and the loss of a valuable substantive right involving over $120,000 in additional taxes, caused by alleged negligence, which is the basis of the damages sought from Reehoorn.

The penalty of $115.20 imposed for the late filing was the full extent of the consequences so far as the imposition of penalties was concerned. No substantive rights were directly affected. The cause of action asserted against Reehoorn is based on the failure to protect the estate against the loss of the special use valuation. Since this amounts to a loss of a valuable substantive right, it is logically and legally a damage separate and distinct from the mere imposition of a penalty for late filing. The assessment of

the penalty for late filing was not a consequence of the alleged negligent failure to secure the special use valuation.

To Johnson's knowledge, at the time he learned of the penalty for late filing, the estate had no provable cause of action for anything other than the amount of the penalty. His lack of knowledge was attributable, at least in a substantial degree, to the undisputed fact that Mullen and Reehoorn assured Johnson they would pay the penalty and that there would be no further consequences from the late filing. Johnson was relying upon the professional advice of Mullen and Reehoorn. Under these circumstances, to allow the penalty incident to trigger the running of the statute of limitations, with the ultimate effect of barring a claim for the loss of a valuable substantive right, gives disproportionate and illogical significance to the imposition of the penalty. This we decline to do.

There is authority for Johnson's position that the cause of action for negligence did not accrue until his being notified by the IRS of the loss of the special use valuation in 1983. He cites *Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976), wherein developers sued the City of Seattle for damages due to issuance of an invalid building permit, and a jury verdict was returned in their favor. The City defended the action on the theory that the claim was barred by the statute of limitations because the developers' cause of action accrued at the time of the issuance of the building permit in 1970. However, the City failed to request an appropriate instruction, and the Supreme Court refused to dismiss the complaint. The court determined that it was unable to conclude as a matter of law that the developers suffered actual and appreciable damage giving rise to a practical legal remedy until 1973 when the Supreme Court declared that the permit was invalid.

Cases from other jurisdictions support the conclusion that the statute of limitations did not begin to run until the estate was notified of the loss of the special use valuation in 1983. In *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876 (Tenn. 1981), attorneys negligently filed a patent. The

result of the negligence was that another application was given priority in time over the negligently filed patent. The Tennessee Supreme Court held that the complaint which was filed on August 27, 1976, was not barred by the 1–year statute of limitations. The court held that although the plaintiff may have been aware of the defendant attorneys' negligence as early as August 1975, no damage or injury resulted to the plaintiff by reason of that negligence until the patent office rejected the application. *See also Kohler v. Woollen, Brown & Hawkins*, 15 Ill. App. 3d 455, 304 N.E.2d 677 (1973) (statute of limitations did not run until the defendants' negligence in filing a claim for arbitration became known to the plaintiff by virtue of the defendant attorneys advising the estate administrators that they would not be able to recover).

*Cameron v. Montgomery*, 225 N.W.2d 154 (Iowa 1975) involves facts remarkably similar to the facts of the instant case. Attorney Montgomery was hired to perform legal services in the administration of the estate, including preparation and filing of the federal estate tax return which was due November 16, 1969. He procrastinated in the preparation of that return. One of the executors urged him to prepare the return prior to the due date; however, he assured the executor that the IRS would do nothing about the late filing. He did not file the return until March 18, 1970. As a result of the late filing, the executors could not use the alternate valuation date and the IRS assessed additional tax, interest and penalty. The executors did not realize that the attorney's assurances about the late filing were untrue until the IRS raised objection and took action to assess the additional sum. The executors filed an action to recover damages from Montgomery more than 2 years from the time of the late filing, but less than 2 years from the time the executors discovered that the attorney's assurances were untrue. The statute of limitations required the complaint to be filed within 2 years from accrual of the claim. The Iowa Supreme Court applied the discovery rule and did not dismiss the action. It noted that the attorney

caused the executors to think the IRS would accept a late return; that the executors discovered the error only when the IRS assessed additional taxes; and that the executors could have changed attorneys in time to get the return timely filed had they known the assurances were not true. *Cf. Moonie v. Lynch,* 256 Cal. App. 2d 361, 64 Cal. Rptr. 55 (1967) (statute of limitations in malpractice action against accountant ran from time plaintiff became aware of IRS assessment of $19,336.25 penalty for tax deficiency which could have been avoided had the accountant not been negligent in preparing the tax return); *Klosure v. Johnson Grant & Co.,* 229 Neb. 369, 427 N.W.2d 44 (1988) (plaintiff discovered accountant malpractice upon learning of IRS objection to tax plan).

On the basis of the undisputed facts and the case law cited above, reasonable persons could reach different conclusions as to whether Johnson discovered the facts or should have discovered the facts constituting his causes of action for negligence at the time the IRS assessed the $115.20 penalty. Therefore we cannot conclude as a matter of law that the estate discovered the facts constituting a cause of action for malpractice on October 5, 1982, when Johnson was notified of the penalty for late filing. Because Johnson filed his complaint less than 3 years after he received notification of the loss of the special use valuation, the trial court erred in dismissing his complaint on statute of limitations grounds.

Reehoorn contends that his lack of privity with Johnson precludes an award of economic damages. This issue was not presented to the trial court and may not be raised in the Court of Appeals. RAP 9.12. Also during argument, counsel for Reehoorn virtually conceded that there was privity of contract. In any event, the record supports the conclusion that Reehoorn was hired by the attorney, acting as an agent of the estate, to prepare the tax return for the estate. There was an implied contract that the estate would pay for Reehoorn's services. We cannot find, as a matter of law, absence of privity from this record.

The judgment is reversed and the case is remanded for further proceedings.

GROSSE, A.C.J., and SWANSON, J., concur.