[No. 42457-2-I.   Division One.   September 20, 1999.]

DAVID NIVEN, ET AL., *Appellants*, v. E.J. BARTELLS CO., ET AL., *Respondents*.

508

*Janet L. Rice* and *William Joel Rutzick* of *Schroeter, Goldmark & Bender P.S.*, for appellants.

*Mark Edward Cavanagh* of *Carney, Badley, Smith & Spellman*; and *Michael B. King, Barry N. Mesher*, and *Gwendolyn Payton Klein* of *Lane Powell Spears Lubersky, L.L.P.*, for respondents.

Becker, J. — This is an appeal from an order of summary judgment dismissing an injured worker's cancer claim against Rapid-American Corporation. We reverse. First, Rapid-American was not released by the worker's earlier settlement of his asbestosis claim against an unaffiliated company. Second, although the claimant's cancer is also the result of his asbestos exposure, the statute of limitation does not bar a trial because Rapid-American has failed to show that the cancer could have been diagnosed three years before the present suit was filed.

■ We review an order of summary judgment by conducting the same inquiry as the trial court, considering all facts and reasonable inferences in the light most favorable to the nonmoving party. *Bruns v. PACCAR, Inc.*, 77 Wn. App. 201, 208, 890 P.2d 469, *review denied*, 126 Wn.2d 1025 (1995).

David Niven worked as an insulator beginning in the mid-1950s and came into frequent contact with asbestos. In November 1980, Niven sued the Celotex Corporation for personal injuries related to asbestosis, a disease caused by the inhalation of asbestos fibers and characterized by the formation of fibrous tissue in the lungs. Niven alleged he had contracted asbestosis as the result of exposure to asbestos products in the course of his employment. He settled this suit in 1986.

In 1993, Niven developed symptoms of lung cancer, also allegedly caused by his workplace exposure to asbestos, and was later diagnosed with lung cancer. He filed another suit in November 1993 alleging that his workplace exposure to asbestos had also caused the lung cancer. One of the named defendants in Niven's second suit was Rapid-American Corporation. Rapid-American has never manufactured or

distributed asbestos. Niven alleged that Rapid-American had liability as a successor to other companies.

Rapid-American moved to dismiss on the basis that Niven had released his claim in the 1986 settlement agreement, and alternatively on the basis that the suit was time-barred. The court granted the motion based on the release and did not reach the statute of limitation issue. Niven appeals from the order of dismissal.

## SUCCESSOR LIABILITY

■ Niven's injuries are allegedly the result of his exposure to asbestos products manufactured or distributed by the Philip Carey Manufacturing Company (old Carey). Old Carey no longer exists. In 1967, it merged with the Glen Alden Company. Liabilities typically become the responsibility of the surviving company when two corporations merge. *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261-62, 692 P.2d 787 (1984). By the terms of the merger agreement as well as by operation of law, Glen Alden assumed old Carey's liabilities. Glen Alden then immediately assigned all the assets and liabilities of old Carey to its own new subsidiary, the Philip Carey Manufacturing Company, later renamed the Philip Carey Corporation (new Carey). In 1972, Glen Alden sold new Carey to Celotex, and Celotex assumed new Carey's liabilities, including the liabilities of old Carey.

■ Niven's 1980 suit against Celotex was based on the role of Celotex as a successor to the liabilities of the Carey companies. In the agreement, Niven released all claims against certain entities described as "facility members," including claims for unknown or future complications relating to his asbestos exposure, including lung cancer, but reserved his right to sue parties not released in the agreement. The 1986 settlement agreement did not list Rapid-American or Glen Alden among the entities released.

Niven's present suit against Rapid-American is based on the theory that Rapid-American independently succeeded to the liabilities of old Carey through its own merger with

Glen Alden in 1972. The evidence supports Niven's theory. Rapid-American, the surviving company in this merger, expressly assumed Glen Alden's liabilities, including the liabilities of old Carey acquired by Glen Alden in the 1967 merger. See *Jeffrey v. Rapid American Corp.*, 448 Mich. 178, 182, 529 N.W.2d 644, *appeal denied*, 448 Mich. 938 (1995). Therefore, Glen Alden's earlier transfer of old Carey's liabilities to its subsidiary, new Carey, did not end Glen Alden's responsibility for those liabilities. It merely gave Glen Alden and its successor, Rapid-American, a claim for indemnity against Celotex after Celotex assumed new Carey's liabilities. See *Tretter v. Rapid American Corp.*, 514 F. Supp. 1344, 1346-47 (E.D. Mo. 1981). Consequently, Glen Alden's assignment of old Carey's liabilities to new Carey does not defeat a claim asserting old Carey's liabilities against Rapid-American as Glen Alden's successor.

Rapid-American nevertheless argues that because it assumed old Carey's liabilities through a series of merger contracts, Niven's suit against Rapid-American sounds in contract rather than tort, and must fail because Niven is not a third-party beneficiary of the merger contracts. Rapid-American cites no authority in support of the theory that Niven's suit for damages caused by asbestos sounds in contract. Niven's suit is a personal injury action. In a personal injury action, a release entered into by a claimant and a person liable "discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides." RCW 4.22.060(2). In the 1986 agreement, Niven did not release Rapid-American and expressly reserved his right to sue entities not named in the agreement.

■ Even assuming that Rapid-American has liability as a joint obligor upon a contract, rather than as the successor to a tortfeasor, the release of one co-obligor does not discharge another co-obligor where the obligee's release contains a reservation of rights. *Seafirst Center Ltd. Partnership v. Erickson*, 127 Wn.2d 355, 366, 898 P.2d 299 (1995).

Rapid-American further argues, again without citing authority, that in a third party beneficiary analysis the fundamental question is whether the obligation to pay damages arising from old Carey liabilities that Niven released in his settlement with Celotex is one that Rapid-American should reasonably expect to have. The 1986 settlement agreement itself demonstrates why Rapid-American could have no reasonable expectation derived from it. The agreement names the Carey companies only in the context of defining Celotex—"The Celotex Corporation, successor in interest to Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs and Panacon." It does not release them in their own right, and it does not release their successors Glen Alden and Rapid-American.

The 1986 agreement states that it "shall inure" to the benefit of the facility members and their successors, assigns, parents, subsidiaries, and "affiliated entities." Rapid-American claims to be an entity affiliated with Celotex because Glen Alden's assumption of old Carey's liabilities is the common source of their liability. But an affiliate is "a person who directly or indirectly controls, or is controlled by, or is under common control with, a person." RCW 23B.19.020(2). Neither Celotex nor Rapid-American was under the direct or indirect control of the other at the time of the 1986 settlement, and they were not under the common control of a third entity. They have no common ownership. *See Continental Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 650, 609 N.E.2d 506, 593 N.Y.S.2d 966 (1993) (mere succession to the same potential liability does not place two corporations in privity with one another). For this reason, Rapid-American does not come within the terms of the 1986 release as an affiliated entity.

The trial court based its dismissal upon the rationale that a settlement is to be broadly construed. It is true that releases are generally given great weight in establishing the finality of a settlement, *Jain v. State Farm Mut. Auto Ins. Co.*, 130 Wn.2d 688, 693, 926 P.2d 923 (1996). But the policy recited in *Jain* does not mean that a term such as

"affiliated entities" should be broadly construed in favor of releasing entities not named in a settlement agreement, especially where there is no evidence that the parties to the agreement intended to do so. In the context of this case, it means only that there is a strong presumption of finality as to the settlement with Celotex and other clearly-identified parties. Furthermore, as *Jain* recognizes, the preference for the finality of a settlement is always tempered by the strong and opposing policy in favor of compensation for the injury. *Id.* at 693-94.

In summary, Rapid-American and Celotex each separately agreed to become obligated for old Carey's liabilities. Rapid-American remains separately obligated for old Carey's liabilities notwithstanding the discharge of Celotex in Niven's 1986 settlement agreement. The trial court erred in concluding, on summary judgment, that Niven's release of Celotex forecloses him from proceeding against Rapid-American.

## STATUTE OF LIMITATIONS

A trial court judgment may be affirmed on any grounds supported by the pleadings and the proof, even if the trial court's specific reason for granting the judgment was in error. *See e.g., Tropiano v. City of Tacoma*, 105 Wn.2d 873, 876-77, 718 P.2d 801 (1986). Rapid-American makes the alternative argument that Niven's present personal injury suit is barred by the statute of limitations. The record below is adequately developed to allow us to consider this argument.

Rapid-American contends that the three-year personal injury statute of limitations, RCW 4.16.080(2), bars Niven's present claim for lung cancer, even though it was filed within three years of his diagnosis of cancer. Niven was aware for many years before filing the present suit that he had been damaged by his exposure to asbestos products. In particular, Niven knew as early as 1980 that he had asbestosis.

According to competent medical testimony in the record, however, the presence of asbestosis does not necessarily imply that lung cancer will develop in the same individual. "Although there is an increased risk of contracting mesothelioma or lung cancer when an individual has asbestosis, the disease processes are completely different. In fact, asbestos-related lung cancer or mesothelioma can exist and develop without the presence of asbestosis." At the time he settled his asbestosis suit in 1986, Niven was aware only of the *possibility* that he would develop lung cancer. Niven argues that his cause of action based on cancer did not accrue until 1993, when he actually developed it.

■ ■ Under Washington's "discovery rule," a cause of action does not accrue until a party knew or should have known the essential elements of the cause of action—duty, breach, causation, and damages. *In re Estates of Hibbard*, 118 Wn.2d 737, 744-45, 826 P.2d 690 (1992). Whether a plaintiff should have discovered the elements of a cause of action to begin running the statute of limitation is ordinarily an issue of fact. Defendants claiming the action is time-barred have the initial burden of showing the absence of an issue of material fact. *Green v. A.P.C.*, 136 Wn.2d 87, 100, 960 P.2d 912 (1998).

Rapid-American contends that the three-year limitation on Niven's cause of action for lung cancer began to run at the latest by 1980, when he brought the first lawsuit alleging that his occupational exposure was the cause of his asbestosis. But Niven could not have recovered damages for cancer in that suit. A plaintiff in an asbestos action may not recover damages for an increased risk of contracting cancer unless he can demonstrate with reasonable probability that he will actually develop the disease. *Sorenson v. Raymark Indus., Inc.*, 51 Wn. App. 954, 956-57, 756 P.2d 740 (1988). Rapid-American acknowledges that its interpretation of the discovery rule, applied in combination with the rule in *Sorenson*, means that Niven could never be compensated for developing cancer. Rapid-American contends that this result, though harsh, is justified by the

policies supporting statutes of limitation and compelled by the following statement from *Steele v. Organon, Inc.*, 43 Wn. App. 230, 716 P.2d 920, *review denied*, 106 Wn.2d 1008 (1986):

"Where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date."

*Steele*, 43 Wn. App. at 234 (quoting *Lindquist v. Mullen*, 45 Wn.2d 675, 677, 277 P.2d 724 (1954), *overruled on other grounds by Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969)).

The plaintiff in *Steele* suffered a temporary loss of sensation in her limbs and was briefly hospitalized when she accidentally ingested drugs in too large a dose. Eight years later, as the delayed effect of the same overdose, the plaintiff suffered a heart attack and a stroke. The court affirmed the dismissal of the plaintiff's malpractice case for the later injuries, reasoning that the damage element of the cause of action accrued at the time of the overdose because the plaintiff suffered "actual and appreciable damages" at that time. *Id.* at 235. By analogy, according to Rapid-American, Niven's second lawsuit must be dismissed because, like the plaintiff in *Steele*, Niven suffered actual and appreciable damages from his exposure to asbestos as early as 1980, even if he did not then know the full extent of the harm his asbestos exposure would eventually cause.

The *Steele* court explicitly acknowledged, however, that a different rationale applies in occupational disease cases because they arise out of a course of events rather than from a discrete act. *Id.* at 236. Also, the stroke and heart attack suffered by the plaintiff in *Steele* resulted from the same disease process as her initial injuries. By contrast, Niven's asbestosis and lung cancer resulted from different disease processes, even though they were both related to

his occupational exposure to asbestos. *See Johnson v. Reehoorn*, 56 Wn. App. 692, 697, 784 P.2d 1301 (1990) (holding *Steele* was not dispositive of a statute of limitation issue in an accounting malpractice claim where the late filing of a tax return caused a small penalty initially and, years later, resulted in the costly loss of a special use valuation.).

Niven's case is factually more similar to *Green v. A.P.C.* than to *Steele*. The plaintiff in *Green* learned in 1986 that prenatal exposure to the drug DES had caused the development of a precancerous condition in her cervix. Her physicians were able to treat this condition successfully. In 1991, medical tests revealed she had a T-shaped uterus, also allegedly the result of the plaintiff's prenatal exposure to DES. She sued Eli Lilly and four other pharmaceutical companies for damages associated with her malformed uterus. The companies obtained a dismissal on summary judgment on grounds that the claim was time-barred. *Green*, 136 Wn.2d at 92-94.

The plaintiff in *Green* urged the Supreme Court to hold that distinct statutory limitations periods apply to putatively "separate and distinct" injuries arising from exposure to toxic products. *Id.* at 97-98. Here, Niven similarly recommends adoption of a rule recognizing, as some other jurisdictions have, that separate and distinct diseases resulting from the same asbestos exposure constitute different causes of action to which different statutes of limitation apply. *See, e.g., Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111, 116 (D.C. Cir. 1982).

In *Green*, the court declined the invitation to apply the separate and distinct injury rule. The court reiterated its preference to avoid splitting causes of action. *Green*, 136 Wn.2d at 97. The court also expressed reservations about making an exception that would allow a personal injury plaintiff to have a new action for each new condition that becomes manifest. Instead, the court adhered to and applied the traditional discovery rule. *Id.* at 98-101.

The traditional discovery rule emphasizes the obligation of the plaintiff to make a diligent inquiry to ascertain the

scope of the actual harm. *Id.* at 96-97. Applying the traditional rule, the court focused on the plaintiff's damage claim involving her T-shaped uterus: "[T]he only question in this case is whether she should have known of its presence more than three years before the time she filed suit." *Id.* at 98-99. Eli Lilly claimed that the plaintiff could have found out about her T-shaped uterus at the time she received treatment for the cervical problem. But because Eli Lilly submitted no competent medical testimony to support this assertion, the court held that the company had failed to sustain its burden of showing an issue of material fact with regard to what the plaintiff should have known. *Id.* at 100-01.

Niven contends the Supreme Court adopted the separate and distinct injury rule sub silentio in *Green*. Rapid-American, on the other hand, maintains that the court in *Green* shunned the separate and distinct injury rule as a slippery slope, at the bottom of which one can expect to find, for example, rearend collision plaintiffs filing successive suits every five or ten years as their damages progress from cervical strain to surgery to depression. On this record we need not choose between these differing assessments of the viability of the separate and distinct injury rule after *Green*. Here, as in *Green*, application of the traditional discovery rule resolves the issue without resort to the separate and distinct injury rule. Because Niven's prior suit was against different parties, the present suit raises no concern about splitting a cause of action, a concept related to claim preclusion and issue preclusion. *See id.* at 97; *Landry v. Luscher*, 95 Wn. App. 779, 976 P.2d 1274 (1999). The only question is whether Niven should have known of the presence of his lung cancer more than three years before he filed suit against Rapid-American. Like the defendants in *Green*, Rapid-American has the initial burden of showing an absence of an issue of material fact. And like the defendants in *Green*, Rapid-American has failed to carry this burden. Absent from the record is any statement from a health care professional showing that Niven's lung cancer could have been diagnosed more than

three years before he filed the present suit. *See Green,* 136 Wn.2d at 100.

Application of the traditional discovery rule disposes of this case the same way it did in *Green.* We conclude the dismissal of Niven's case cannot be affirmed on the basis that it is time-barred.

## SABERHAGEN

Niven also appeals from the dismissal of his claim against Saberhagen. He sued Saberhagen as a successor to the Brower Company. He alleges that Brower had a contract to install asbestos-containing insulators at Todd Shipyard when he worked there for about one month during 1967.

To establish that Brower products were being installed at Todd during the month Niven worked there, Niven declares that he saw people working at Todd who to his knowledge had worked for Brower on previous jobs. This is insufficient to establish more than a speculative link between Brower products and Niven's injuries. The court did not err in dismissing Niven's claim against Saberhagen.

The order of summary judgment dismissing Rapid-American is reversed. The order of summary judgment dismissing Saberhagen is affirmed.

AGID, A.C.J., and ELLINGTON, J., concur.