IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DAVID CEBERT, an individual, | ) | |
| | ) | No. 36468-2-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PATRICK KENNEDY and JANE DOE | ) | UNPUBLISHED OPINION |
| KENNEDY, a marital community, JOHN | ) | |
| KENNEDY and JANE DOE KENNEDY, | ) | |
| a marital community, AXTEL | ) | |
| SCIENTIFIC, INC., a Nevada corporation, | ) | |
| and MITIGATION OF DISEASE, INC., a | ) | |
| Delaware corporation, | ) | |
| | ) | |
| Respondent. | ) | |

KORSMO, J. — David Cebert appeals from the dismissal at summary judgment of

his claims against Mitigation of Disease, Inc. (MODI), et al., and subsequent jury verdicts

in favor of the defendants on their counterclaims against Cebert. We largely affirm and

grant the defendants attorney fees, but reverse portions of the summary judgment and

remand for further proceedings.

FACTS

John Kennedy is a scientist living in Maryland and his brother, Patrick Kennedy, is a businessman living in Texas. Cebert lives in Spokane. Patrick[1] once served as vice president of a technology company started by Cebert. John developed a product that treats diseases in plants and animals. It was incorporated into a cream for human use and marketed under the brand name Accilion.

MODI was incorporated in Delaware on February 7, 2006, but did not hold its first board of directors meeting until February 14, 2012. John was elected president and chairman of the board, Patrick was elected chief executive officer, and Robert Fritzges was elected secretary and treasurer. The board's second meeting was March 5, 2012. Fritzges was appointed chief operating officer (COO). Cebert was in attendance at the second meeting, but had not been present at the first. MODI holds the U.S. patent for Accilion.

Kennedy and Fritzges formed Axtel Scientific, Inc. in 2012, with the intent of commercializing Accilion. MODI licensed the Accilion patent to Axtel. Les Hamasaki created the JW Kennedy Foundation (Foundation) to provide Accilion to patients in need. He funded the Foundation himself.

---

[1] For clarity, we refer to the Kennedy brothers by their first names and use their surname to refer to them collectively. We omit the honorific "Mr." since all parties are male.

2

In a telephone call in late December 2011 or early 2012, John orally promised the presidency of MODI to Cebert.[2] The offer was never reduced to writing and was accepted in a January 2012 telephone conversation between the two men. The offer also called for Cebert to receive 600,000 shares of MODI as well as a monthly salary that would increase over time. However, the salary would not be paid until the company started making money. Cebert never received a paycheck from the company.

Cebert created a website, logo, and label for MODI. In August or September 2012, Cebert drafted a business plan that acknowledged that John was the president of MODI. On March 29, 2013, John sent an e-mail to Fritzges, Kennedy, and Cebert in which he referred to Cebert as president of MODI. On September 17, 2014, Cebert sent John and Patrick an e-mail in which he acknowledged the end of his involvement with Accilion, but expressed his willingness to repair the business relationship in the future.[3]

While working with MODI, Cebert collected and stored data from patient trials of Accilion in a database he created. John applied for a patent for Accilion in Russia. In October 2014, the Russian patent office informed John that if he did not submit

---

[2] Because this issue was resolved on summary judgment, we state the facts in the light most favorable to plaintiff Cebert. *Mohr v. Grantham*, 172 Wn.2d 844, 859, 262 P.3d 490 (2011). Much of this information comes from the deposition of Cebert. John testified in his deposition that he never intended Cebert to be president of MODI or be paid.

[3] Cebert treats September 17, 2014 as the last day of his employment with MODI. Clerk's Papers at 515.

experimental data by November 7, 2014, his patent application would be deemed

abandoned. John in turn asked Cebert to provide him with the data Cebert had been

tracking. Cebert did not turn over any data. On November 2, John again requested that

Cebert provide him with the data. Cebert again failed to turn over any data. As a result,

the patent deadline was not met. Subsequently, Fritzges informed Cebert that the patent

application had been abandoned.

Cebert introduced his friend Mike Noder to Patrick. Noder paid Axtel $19,000 for

a batch of Accilion. Noder then created Advanced Mineral Compounds, LLC (AMC),

whose purpose was to distribute Accilion. In January 2015, counsel for AMC and Noder

sent letters to Fritzges and Les Hamasaki. The letters asserted that AMC had exclusive

rights to market, sell, and distribute Accilion. The letters instructed MODI, Axtel, and

the Foundation to cease and desist from those activities. Cebert assisted Noder and his

counsel in preparing the letters.

Cebert filed this lawsuit on February 16, 2016. He alleged fraud, breach of

contract, promissory estoppel,[4] quantum meruit, and unlawful withholding of wages

under RCW 49.48.010. The defendants filed counterclaims against Plaintiffs for fraud,[5]

conversion, misappropriation of trade secrets, and tortious with business expectancy.

---

[4] Cebert's promissory estoppel claim is not at issue on appeal.
[5] The court dismissed the fraud claim pursuant to CR 50.

The defendants eventually sought summary judgment on all of Cebert's claims, arguing that they were barred by the statute of limitations and the statute of frauds. The court concluded that the claims had all accrued in 2012 and were barred by the three year statute of limitations period. The case proceeded to jury trial on the defendant's counterclaims.

The jury found Cebert liable for conversion, misappropriation of trade secrets, and tortious interference with business expectancies. The jury also found that Cebert's misappropriation of trade secrets was willful and malicious. Pursuant to the verdicts, the court awarded the defendants $428,500 in compensatory damages, $15,000 in exemplary damages, and $191,582.50 in attorney fees.

Cebert timely appealed to this court.[6] A panel heard oral argument of the case.

## ANALYSIS

Cebert challenges the dismissal of his claims at summary judgment as well as the judgment entered against him. We address first the propriety of the summary judgment before turning to his claims that the mandatory joinder ruling requires retrial of the defendants' case and his allegation that evidentiary errors also require a new trial.

---

[6] Due to Axtell filing for bankruptcy, Cebert's appeal was stayed against Axtell. Our commissioner denied Cebert's request to stay the remainder of the appeal. *See* Comm'r's Ruling (Mar. 25, 2019).

5

*Summary Judgment*

Cebert argues that questions of material fact exist concerning the accrual of his claims that require reversing the statute of limitations ruling. The defendants contend that the statute of limitations barred all of Cebert's claims and that the statute of frauds also barred them. After discussing the standards of review, we will briefly address the statute of frauds argument before turning to the individual causes of action.

When considering an appeal from a summary judgment order of dismissal, an appellate court will review the ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). If there is no genuine issue of material fact, summary judgment will be granted if the moving party is entitled to judgment as a matter of law. *Id.*; *Trimble v. Wash. State Univ.*, 140 Wn.2d 88, 93, 993 P.2d 259 (2000); CR 56(c).

A defendant moving for summary judgment on statute of limitations grounds must show an absence of fact as to when the claims accrued. *Malnar v. Carlson*, 128 Wn.2d 521, 530, 910 P.2d 455 (1996); *Niven v. E.J. Bartells Co.*, 97 Wn. App. 507, 514, 983 P.2d 1193 (1999). "A cause of action accrues when a party has a right to apply to a court for relief." *Malnar*, 128 Wn.2d at 529.

RCW 4.16.080(3) provides a three year statute of limitations for claims based on express or implied contracts. RCW 4.16.080(4) provides for a three year statute of

limitations for claims based on fraud; the period does not begin to run until the fraud is discovered, or should have been discovered. Both parties agree that each of Cebert's causes of action is subject to a three-year limitations period.

Cebert's claims revolve around three promises: (1) Cebert would be president of MODI, (2) Cebert would receive shares of MODI, and (3) Cebert would receive a salary. None of these promises were in writing.

Defendants argue that because the agreement was expected to take more than one year to be performed, the statute of frauds requires dismissal of all claims. A contract that cannot be performed within one year is void unless in writing. RCW 19.36.010(1). "A contract for continuing performance that fails to specify the intended duration is terminable at will and is therefore outside of the statute of frauds." *Duncan v. Alaska USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 73, 199 P.3d 991 (2008).

Cebert's allegations state a case of continuing performance rather than a specified length of time in which to serve as company president. Accordingly, the statute of frauds is inapplicable.

The remaining question is when each cause of action accrued. We address the contentions in the following order: (1) breach of contract, (2) fraud, (3) quantum meruit, and (4) wage withholding.

*Breach of Contract.* A cause of action for breach of contract accrues upon breach. *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 577-578, 146 P.3d 423

(2006). The discovery rule does not generally apply. *Id.* at 578; *Kelly v. Allianz Life Ins. Co. of N. Am.*, 178 Wn. App. 395, 399, 314 P.3d 755 (2013).

By the March 2012 board meeting, Cebert knew that MODI was up and running, that John was serving as president, and that no shares of stock had been issued to him. The contract had been breached. Cebert filed this action four years later. It was untimely. The trial court correctly dismissed the breach of contract action.

The failure of the breach of contract theory removes the presidency and stock share issues from the case. The remaining theories all raise the question of whether Cebert was employed by MODI.

*Fraud.* A cause of action for fraud accrues when "the aggrieved party discovers or could have discovered all elements of the claim." *Norris v. Church & Co., Inc.*, 115 Wn. App. 511, 517, 63 P.3d 153 (2002). There are nine elements of a fraud claim:

> (1) a representation of existing fact, (2) that is material, (3) and false, (4) the speaker knows of its falsity, (5) intent to induce another to act, (6) ignorance of its falsity by the listener, (7) the latter's reliance on the truth of the representation, (8) her right to rely on it, and (9) consequent damage.

*Baker Boyer Nat'l Bank v. Foust*, 6 Wn. App. 2d 375, 381 & n.4, 436 P.3d 382 (2018).

In his 2017 deposition, John testified that he never intended to make Cebert president or compensate him. Cebert now cites the discovery of that information as the final piece of the puzzle that started the statute of limitations running. However, by then Cebert had already filed in 2016 both the initial complaint and an amended complaint that

each stated fraud as the first cause of action.  He did not discover his basis for action at the 2017 deposition.[7]  Instead, he had based it on the 2011 telephone promise and subsequent failure to pay a monthly salary.[8]  The material misrepresentation that he alleged was the basis for his fraud claim that occurred four years before he filed his first fraud allegation.

The fraud claim was untimely filed.  The trial court correctly dismissed the contention.

*Quantum Meruit.*  This "is the method of recovering the reasonable value of services provided under a contract implied in fact."  *Young v. Young*, 164 Wn.2d 477, 485, 191 P.3d 1258 (2008).  "[T]he elements of a contract implied in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, and (3) the defendant knows or should know the plaintiff expects payment for the work."  *Id*. at 486.

We agree with Cebert that a question of fact exists concerning when this claim accrued.  Cebert alleges that he performed work for the defendants at their request, expected to be paid for it, and defendants knew he expected to be paid.  He was working up to his departure in the fall of 2014, and even after he left Kennedy sought patient trial information from him in support of the Russia patent application.

_____

[7] The deposition testimony is still useful information about Kennedy's intent.

[8] If he believed that payment was properly withheld until the company had a stable income, he has not identified the date when that occurred.  If that has not yet been achieved, then payment is not even yet owing and the cause of action also fails for that reason.

Recovery under this cause of action depends upon work performed with expectation of pay. The evidence supports the view that, within three years of bringing his claim, Cebert performed work that both parties believed he would be paid for. Accordingly, a factual question exists that should have prevented summary judgment.

The trial court erred in dismissing this claim. We reverse.

*Wage Withholding.* Washington law makes it unlawful for an employer to withhold an employee's wages.

> When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due him or her on account of his or her employment shall be paid to him or her at the end of the established pay period.

RCW 49.48.010.

Under this statute, Cebert's departure from the company in September 2013 meant that the paycheck for that period was due on the normal payment date. This claim was filed within three years of the termination of employment. Accordingly, the claim was timely as to at least the final paycheck.[9]

The trial court erred in granting summary judgment on this claim. Again, we reverse.

---

[9] The parties have not briefed the topic of whether monthly pay became due and owing each month that it went unpaid. We therefore do not express any opinion concerning the potential application of the statute of limitations to any earlier pay periods under either of Cebert's surviving theories.

10

*Compulsory Counterclaims*

The first of the trial-related arguments concerns a contention that the defendants' counterclaims need to be retried since some of the plaintiff's claims now must go to trial. He cites no relevant authority in support of the argument.

CR 13(b) permits counterclaims that do not arise out of the same action as the plaintiff's claims to be pleaded and joined. In contrast, CR 13(a) requires a defendant to assert a counterclaim arising from the same transaction or occurrence that is the subject of plaintiff's claims. A defendant who fails to do so is barred from bringing the claim in a subsequent action. *Schoeman v. New York Life Ins. Co.*, 106 Wn.2d 855, 863, 726 P.2d 1 (1986). "The considerations behind compulsory counterclaims include judicial economy, fairness and convenience." *Id*. at 866.

CR 13 is a rule of *pleading* requirements, not of trial practice. Understandably, no case law has been cited by the parties suggesting that the wrongful separation into multiple trials of compulsorily joined claims requires a retrial. That is unsurprising since compulsory counterclaims may be tried separately. CR 42(b). Even if the claims were compulsory, a question we do not decide, they were not required to be heard together.[10]

---

[10] While Cebert's claims involved his time working for the defendants, their claims against him involved his activities after he terminated his relationship with them.

Cebert might still prevail if he could demonstrate that the wrongful summary judgment deprived him of the opportunity to fairly contest the counterclaims at trial.[11] He has not identified any evidence that was erroneously excluded because of the summary judgment nor made any effort to explain how he was prejudiced. He simply has not shown error.

This argument is without merit.

*Evidentiary Arguments*

Cebert next argues that the trial court twice erred in admitting evidence and also that the defendants did not establish damages. These claims, too, are without merit. After noting the standards governing review, we address each of the evidentiary challenges before turning to the evidentiary sufficiency claim.

This court reviews evidentiary rulings for abuse of discretion. *Hoskins v. Reich*, 142 Wn. App. 557, 566, 174 P.3d 1250 (2008). A court abuses its discretion when it makes a decision that is manifestly unreasonable or based on untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Harmless error is not grounds for reversal. *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983). Error is harmless unless it

---

[11] Any effort to apply res judicata or collateral estoppel at a second trial will have to carefully consider evidence that might not have been relevant at the first trial or that plaintiff would not have had a fair opportunity to develop.

affected the outcome of trial. *Id*. Improperly admitted evidence is harmless if it is cumulative of other evidence. *Reich*, 142 Wn. App. at 570.

*Cease and Desist Letters*. Cebert contends that the court erred in admitting the cease and desist letters authored by AMC's counsel. He argues that the letters were not relevant and also constituted hearsay.

Relevant evidence is admissible, while irrelevant evidence is not. ER 402. Evidence is relevant if it makes a material fact more or less probable. ER 401. These letters were relevant to show that AMC, assisted by Cebert, was interfering with MODI's efforts to market Accilion.

Hearsay is an out of court statement offered to prove the truth of the matter asserted. ER 801(a)-(c). Unless an exception applies, hearsay is inadmissible. ER 802.

The letters were not hearsay because they were not offered to prove the truth of the assertions therein (*i.e*., that AMC had exclusive rights to market Accilion). Instead, they were offered to prove that the letters were sent. The letters did not constitute hearsay. The alleged error also was not prejudicial. The exhibits duplicated testimony of Cebert and other witnesses and could not have been prejudicial.

The trial court did not abuse its discretion.

*Handwritten Notes*. Cebert next argues that the court erred in admitting two notes written in his own hand that referenced his claims against the defendants. He argues the notes were not relevant because they related to his dismissed claims.

13

The exhibits were relevant to the defendants' claim that Cebert was attempting to

extort money by withholding the patient data. Accordingly, they were properly admitted.

In addition, the notes were not prejudicial. The jury knew that Cebert's claims had been

resolved and they were directed not to speculate. "Jurors are presumed to follow the

court's instructions." *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015).

Cebert was free to talk about the notes, but declined to do so.

Once again, the court did not abuse its discretion in admitting the evidence. There

was no error.

*Proof of Damages.* The final evidentiary challenge is to the sufficiency of

damages offered by the defendants. Cebert argues that there was no certainty that the

patent would have been granted. However, the claim sought to recover the costs of

duplicating the patient data and reapplying for the Russian patent. The evidence

supported that claim.

"The purpose of tort damages is to place the plaintiff in the condition he would

have been in had the wrong not occurred." *Kim v. O'Sullivan*, 133 Wn. App. 557, 564,

137 P.3d 61 (2006). Claimant must prove damages with reasonable certainty. *Lewis*

*River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993).

"[O]nce the [plaintiff] establishes the fact of loss with certainty (by a preponderance of

the evidence), uncertainty regarding the amount of loss will not prevent recovery." *Mut.*

*of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 715, 315 P.3d 1143

(2013) (alteration in original) (quoting *Lewis River*, 120 Wn.2d at 717). Whether

plaintiff proved loss is a question of fact. *Id.*

The defendants proved their loss with reasonable certainty. They presented the e-mail from their patent attorneys explaining that their Russian patent application would be deemed abandoned if they did not submit patient data by November 7, 2014. John testified that they failed to meet that deadline. Cebert testified that Fritzges informed him that the patent had been abandoned. This evidence was sufficient for the jury to find that the defendants suffered a loss.

They also presented sufficient evidence of the damages suffered by abandoning the Russian patent application. John testified that he would have to spend years and money on conducting studies, collecting data, and reapplying for the patent in order to return the defendants to the position they were in when the patent was abandoned. They proved the fact of damages; that they did not prove their damages with exactitude does not bar recovery.

The evidence supported the Russia patent claim.

*Attorney Fees*

The respondents seek attorney fees on appeal in accordance with RCW 19.108.040. The statute permits an award of fees for willful and malicious misappropriation of trade secrets. In response to the jury's finding, the trial court awarded attorney fees to the defendants.

A party prevailing in a trade secrets case is entitled to attorney fees both at trial and on appeal. *Eagle Group, Inc. v. Pullen*, 114 Wn. App. 409, 424, 58 P.3d 292 (2002). Here, the jury found that Cebert willfully and maliciously appropriated trade secrets. The defendants are thus entitled to their attorney fees for the successful defense of that claim on appeal. *Thola v. Henschell*, 140 Wn. App. 70, 90, 164 P.3d 524 (2007). However, the trade secrets attorney fee statute does not purport to authorize a fee award for other claims. We conclude that the defendants may recover only their attorney fees related to the trade secrets issue.

Our commissioner will consider a timely request for attorney fees. Any request should relate to the briefing of the trial issues rather than those related to the summary judgment proceedings.

Affirmed in part and reversed in part.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

                                                      _____
                                                            Korsmo, A.C.J.

WE CONCUR:

_____         _____
       Fearing, J.                                  Lawrence-Berrey, J.