[No. 58216-5.   En Banc.   February 11, 1993.]

LEWIS RIVER GOLF, INC., *Petitioner*, v. O.M. SCOTT & SONS, *Respondent*.

*Steven A. Branom, James M. Beecher, Gary A. Boe,* and *Hackett, Beecher & Hart,* for petitioner.

*Schwabe, Williamson & Wyatt, Lory R. Lybeck,* and *Mildred J. Carmack,* for respondent.

BRACHTENBACH, J. — The main issue is narrow and essentially factual, *i.e.*, should the testimony of plaintiff's damage expert have been stricken because it was speculative or not supported in the record? Secondary issues are whether, on retrial after the Court of Appeals granted a new trial limited to damages, the retrial violated the mandate as to the damages recoverable, and whether defendant has preserved two other issues raised in the Court of Appeals, and, if so, their resolution.

To understand the present posture of these issues, it is necessary to state the history of this case. Plaintiff, Lewis River Golf, Inc., grew sod or turf. It bought seed from defendant, O.M. Scott & Sons, under an express warranty. The sod grown from the seed had weeds. Plaintiff claimed that the express warranty was breached. Plaintiff lost most of its commercial customers and had been sued by two of its buyers dissatisfied with the sod. Defendant's proposed remedies were unsuccessful in resolving the weed problem. Plaintiff cut production from 275 acres to 45 acres and destroyed all of the turf raised from defendant's seed.

Plaintiff sued defendant for losses, including lost profits. In 1985, a jury awarded plaintiff $1,327,000. The verdict was unsegregated as to the elements of the damages found. In an unpublished 1987 opinion the Court of Appeals affirmed the verdict on liability, but held that the testimony of plaintiff's expert included two improper calculations, that is, inclusion of lost profits on unplanted acreage and certain interest costs. It held: "The award of damages is reversed and remanded for trial on that issue alone. In all other respects, the judgment is affirmed." *Lewis River Golf, Inc. v. O.M. Scott & Sons*, noted at 49 Wn. App. 1069 (1987), slip op. at 13, *review denied*, 110 Wn.2d 1026 (1988).

Thus, in 1989, when the case was again tried to a jury, there was no question of liability. The trial was limited to determination of damages. However, between the first and second trials, the facts about damages had changed. Plaintiff had sold its sod business. Plaintiff contended that, along with specific damages, it suffered a loss on the sale of its sod business because of damage to its reputation or goodwill from the sale of "bad" sod resulting from defendant's defective seed. The trial court submitted five elements of damages to the jury with a segregated verdict form. The jury followed the verdict form and made a separate award for items one through four, as defined in the instructions. A separate award of $1,026,800 was made for the loss plaintiff "suffered on the sale of its sod division". Clerk's Papers, at 969.

Defendant again appealed to the Court of Appeals. In an unpublished decision, *Lewis River Golf, Inc. v. O.M. Scott & Sons,* noted at 60 Wn. App. 1042, *review granted,* 117 Wn.2d 1001 (1991), that court (1) affirmed the award of $664,430 made for items one through four of the damage instruction, but (2) reversed the verdict as to the loss on sale of the business. Plaintiff petitioned for review, but only, of course, as to the portion of the verdict which was reversed. Defendant did not petition for review of that portion of the verdict which was affirmed but conditionally raised issues if review were granted. We reverse the Court of Appeals to the extent that it reversed the verdict; thus, the judgment below is affirmed in its entirety.

To put the main issue in perspective, we emphasize what is not in issue. Liability for breach of warranty is no longer a question; that was decided in the earlier appeal. No error was assigned on appeal to any jury instruction given. The damages instruction listed five elements of damages, which the jury could award. The fifth element is for: "The loss [if any] Lewis River Golf suffered on the sale of its sod division." Clerk's Papers, at 969. By allowing this element of damages to go to the jury, without exception, defendant necessarily concedes that it is a proper measure of damages. Thus, defendant is limited to challenging the evidence to

support an award for that unchallenged element of damages. The award for the other four elements of damages is not now challenged.

While defendant does not challenge the legal theory upon which plaintiff recovered, it is helpful to mention briefly the substance of the law because it is directly related to the nature and quantum of proof required to support an award for loss on the sale of the sod division.

■ Recovery of consequential damages is expressly authorized by the Uniform Commercial Code, which governs this action. RCW 62A.2-715(2)(a). The question then is whether the damage to plaintiff's reputation or goodwill is the type of consequential damage allowed under the statute. There is no doubt that such a damage claim is recognized. "In Washington, injury to a buyer's business reputation has been recognized as compensable . . . Goldstein v. J.W. Carter Co., 157 Wash. 405, 288 Pac. 1063 (1930)." Cosway, *Sales—A Comparison of the Law in Washington and the Uniform Commercial Code*, 36 Wash. L. Rev. 440, 466 n.98 (1961).

There is substantial authority that damages are recoverable for damage to a business reputation or goodwill and resulting loss in the value of the business. "As a general rule, loss in the value of a business as a going concern, or loss in the value of its good will, may be recovered as an element of consequential damages." *Hydraform Prods. Corp. v. American Steel & Aluminum Corp.*, 127 N.H. 187, 199, 498 A.2d 339 (1985); accord, *Delano Growers' Coop. Winery v. Supreme Wine Co.*, 393 Mass. 666, 684, 473 N.E.2d 1066, 1077 (1985).

> [R]ecognizing methods for calculation of goodwill by economists and accountants, goodwill has become more widely accepted as a recoverable item of consequential loss.
> . . . If one removes the Pennsylvania cases from the count, a significant majority of the cases have allowed for the recovery of lost goodwill in proper circumstances.

(Footnotes omitted.) Anderson, *Incidental and Consequential Damages*, 7 J.L. & Com. 327, 420-21 (1987).

Pennsylvania has overruled the cases referred to in the cited article and now holds that a claim for loss of business

reputation or goodwill is a jury question if there is a "reasonable basis" for calculating damages. *AM/PM Franchise Assoc. v. ARCO*, 526 Pa. 110, 131 n.20, 584 A.2d 915 (1990). Defendant relies on a case supplying the now-overruled Pennsylvania law. Brief of Appellant, at 21.

It is clear from the foregoing that the law permits recovery for the kind of damage contained in the jury instruction and verdict form, *i.e.*, an award for damage to goodwill or business reputation. In this case, that loss was evidenced by a diminution in the value of the business when it was sold.

■ It is true that damages must be proved with reasonable certainty. *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 16, 390 P.2d 677, 396 P.2d 879 (1964). However, this reasonable certainty requirement must be considered in light of several underlying principles.

First, RCW 62A.1-106(1) provides:

> The remedies provided by this Title shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed . . ..

Second, the official comment to RCWA 62A.2-715 states:

> The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section of liberal administration of remedies *rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances.*

(Italics ours.) RCWA 62A.2-715 Official Comment 4.

Third is the established principle that "the doctrine respecting the matter of certainty, properly applied, is concerned more with the *fact of damage than with the extent or amount of damage.*" *Gaasland Co. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 712-13, 257 P.2d 784 (1953); *Alpine Indus., Inc. v. Gohl*, 30 Wn. App. 750, 754, 637 P.2d 998, 645 P.2d 737 (1981), *review denied*, 97 Wn.2d 1013 (1982).

■ These Washington holdings represent the accepted rule of law:

> It is often said that, once the buyer establishes the *fact* of loss with certainty (by a preponderance of the evidence), uncertainty regarding the *amount* of loss will not prevent recovery.

> Thus, a buyer will not be required to prove an exact amount of damages, and recovery will not be denied because damages are difficult to ascertain. . . . Generally, whether the buyer has proved his loss with sufficient certainty *is a question of fact*.

(Footnotes omitted. Some italics ours.) Anderson, *Incidental and Consequential Damages*, 7 J.L. & Com. 327, 395-96 (1987).

■■ Further, it is well recognized that the type of damages here involved are not subject to proof of mathematical certainty. "Compensatory damages are often at best approximate: they have to be proved with whatever definiteness and accuracy the facts permit, but no more.' Official UCC Comment, § 1-106. . . ." *Cricket Alley Corp. v. Data Terminal Sys., Inc.*, 240 Kan. 661, 669, 732 P.2d 719 (1987).

> With respect to loss of goodwill, proving damages with reasonable certainty should track the generally expansive recent history of lost profits. However, unlike lost profits, *goodwill relates to the future* and, thus, no actual profit base will exist for use at trial. Accordingly, the expert testimony of accountants and economists will prove invaluable to the aggrieved buyer in presenting his claim for loss of goodwill. *Such testimony will generally be accepted by the courts in assessing goodwill claims.*

(Footnote omitted. Italics ours.) Anderson, *Incidental and Consequential Damages*, 7 J.L. & Com. 327, 422 (1987).

It is important to note that defendant *concedes* the *fact* of damage. To quote the defendant: "Lewis River *produced evidence* that [the] sale of the VBB [Victa Bristol Baron] sod [defendant's product] damaged its reputation and caused loss of sales (RP 238, 268, 290, 391, 796, 830). *That evidence was sufficient to go [to] the jury.*" (Italics ours.) Brief of Appellant, at 11 n.6.

We now turn to defendant's challenge to the expert's testimony. At several points during the trial, defendant made the following motions to strike the testimony of plaintiff's expert:

> [I]t is not supported by credible facts in the record. It is based on opinions or assumptions that are contrary to facts in this record.

Vertatim Report of Proceedings (VRP) vol. 5, at 791.

My point is it is just so far out that it should be stricken.

VRP vol. 5, at 793. Later,

> [W]e moved to strike Jolivet's [expert] testimony for the reason he is not supported, and it is outside the total overall perimeter, and the jury would have to speculate.

VRP vol. 6, at 880.

At the end of the case, defendant moved, in part, as follows:

> I will separately move, Your Honor, then for a directed verdict or to strike out the testimony that's been offered claimed to be in support of a loss business value pursuant to that element of their case, again being far too speculative to submit to a jury and as being unsupported by credible evidence . . ..

VRP vol. 8, at 1369.

Several of the grounds advanced in support of its motions are without merit. First, defendant asserts that the expert's opinion is not supported by *credible* evidence. If the evidence was properly admitted, credibility is for the jury. Second, the assertion that the evidence is "just so far out" is a meaningless phrase. This leaves the claim that the expert's testimony was too speculative and based on unsupported assumptions.

Whether the testimony was so speculative as to be inadmissible, or whether it should have been stricken after admission depends upon the nature and quantum of proof required for the particular type of damages involved. As noted above, the matter of certainty of damages is concerned more with the *fact* of damage than with the extent or amount of damage. Damage to business reputation and loss of goodwill have to be proved with whatever definiteness and accuracy the facts permit, but no more. *Cricket Alley Corp. v. Data Terminal Sys., Inc., supra.*

As noted, defendant concedes the *fact* of damage and its sufficiency to go to the jury. Brief of Appellant, at 11 n.6. Thus, defendant's claim of speculation is limited to the extent or amount of damage which is subject to much less demanding examination. Our discussion hereafter of the evidence supporting the expert's opinions will demonstrate

that his opinions were not so speculative as to be inadmissible or subject to striking.

A separate and distinct question is the challenge that the expert's opinions are without factual support. The facts and data which may support an expert's opinion are delineated in ER 703.

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Defendant argues that despite ER 703, the expert's opinions can be based only on facts in the record. We need not decide this precise question because the record does contain supporting facts.

We first note that defendant does not contend that the witness was not qualified as an expert. Defendant does not contend that the testimony was not that kind that would assist the trier of fact. ER 702. Defendant does not contend that the methodology used by the expert was invalid. Defendant's expert used the same methodology. VRP vol. 7, at 1197.

Thus, defendant's challenge is limited to the six factors which it claims went into the opinions of plaintiff's expert. Those factors are first identified specifically in defendant's reply brief. We find all of the challenged assumptions supported. The evidence was properly admitted and not stricken. As the trial court repeatedly ruled, and as shown hereafter, the challenges went to weight, not to admissibility.

Plaintiff's expert was a Harvard educated economist and a former professor of finance at the University of Washington. He examined and relied upon plaintiff's financial records and facts furnished him prior to trial by the owner of plaintiff corporation, as authorized by ER 703.

The ultimate opinion which defendant attacks is the expert's estimate of the loss plaintiff allegedly sustained when it sold its sod business. To calculate that loss, the

expert assumed a sod farm of 195 acres, a certain marketable amount of sod per acre, the ability to sell that sod, and a certain profit margin. He then calculated the net earnings, after taxes, and applied a price earnings ratio to arrive at his opinion of the value of the business. From that value he deducted the price realized when the business was sold, resulting in his opinion of the loss sustained upon sale of the business. The jury awarded $181,917 less than his estimate of loss.

Defendant first attacks the size of the farm, assumed by the expert to be 195 acres. The trial court recognized that this was a key assumption, stating:

> They've [the jury] got to determine, at some point in time, the size of this farm. The size of the farm, as far as I'm concerned, is not determined on the amount of seed purchase. That's the outside parameter. The size of the farm is based upon Stading's [owner of plaintiff corporation] practices and what he did.

VRP vol. 9, at 1516. To eliminate any doubt on this critical point, the trial court included in the verdict form a question: "Do you find that the seeding rate for VBB seed as actually planted by Stading was the seeding rate Dr. Jolivet [the expert] used in his testimony? ANSWER: Yes." Clerk's Papers, at 977. In addition, the owner testified that the amount of seed purchased would seed between 190 and 210 acres. VRP vol. 3, at 375. The overall sod farm was 275 acres. VRP vol. 4, at 540. There is testimony of 198 acres and 200 acres of sod. VRP vol. 3, at 476, 352. The record supports the expert's use of a farm of 195 acres as a base of production.

Defendant next challenges the expert's assumption that the sod farm would produce 40,000 marketable square feet of sod per acre. Two items of testimony clearly support this fact. First, the owner testified: "If our sod is in good shape, everything is right, we'll get our 40,000 feet." Defendant's witness found an actual yield on plaintiff's farm of either 39,366 or 39,666 square feet per acre, explaining: "The only difference between 39,666 that I arrived at versus the 40,000 is the rounding". VRP vol. 7, at 1125. There is adequate support to reject this challenge.

Next defendant questions the expert's conclusion that plaintiff would have been able to sell the sod it produced at market price. Plaintiff was selling such quantities that he purchased additional sod from a competitor who testified that plaintiff was probably selling all the sod he could produce. VRP vol. 5, at 671. That same competitor went out of business, removing a large supplier. VRP vol. 5, at 668-71. One landscaper who was installing 1 to 1½ million square feet of sod a year testified that he quit buying sod from defendant's seed because of devastating problems with VBB turf. VRP vol. 2, at 199. The expert calculated plaintiff's expected market share at 5.8 percent of total market, and estimated that plaintiff would maintain that share with acceptable sod. All in all, there was support for that opinion.

Defendant challenges the level of profit which he assumed plaintiff would earn. While defendant questions the validity of the figures used, the expert started with actual profit for 1 year, analyzed a 6-year period, and then used an average price for a 3-year period. VRP vol. 5, at 707, 712-14. It was for the jury to determine whether the average profit level would be maintained. There were facts to which the expert applied his expertise. As noted by a leading commentator, goodwill damages relate to the future, unlike lost profits. He notes that the testimony of accountants and economists (plaintiff's expert) will generally be accepted in making such future projections. Anderson, *Incidental and Consequential Damages*, 7 J.L. & Com. 327 (1987).

The expert applied a price earnings ratio of 9.5. He relied upon public data reflecting the price earnings ratio of publicly owned companies, then used his expert judgment in lowering the median for a privately owned company. He testified this is the most used technique in valuation of a business. VRP vol. 5, at 725. This is the type of data reasonably relied upon by experts within the scope of ER 703. Defendant does not argue otherwise. The proof of the pudding is that defendant's expert used a multiplier of 4, rather than 9.5. VRP vol. 7, at 1188. Defendant's expert said it was a difference of opinion whether to use a ratio of 4 or 9.5.

VRP vol. 7, at 1197. Such difference of opinion is the essence of conflicting opinions from experts. There was adequate basis for expert opinion using this factor.

Finally, defendant argues that the expert was wrong in excluding ownership of the farming land from his calculations; part of the land was leased. The expert rendered his opinion and explanation why this was not a necessary factor in his opinion. Defendant argues that no buyer would buy a sod business without the land. The expert explained the difference between valuing a going business and its underlying assets. He took into account the amount attributable to fixed assets in calculating the amount realized from the sale. VRP vol. 5, at 715-16, 764-65, 773. Again, defendant's argument is with the weight of the opinion, not its admissibility.

The trial court properly admitted the expert testimony and properly denied defendant's motions to strike.

The second issue is whether the mandate of the Court of Appeals in the first appeal was violated on retrial. In the first trial the jury awarded plaintiff $1,327,000 in unsegregated damages. On appeal, the Court of Appeals concluded "[l]ost profits could only be based on the amount of VBB seed purchased by Lewis River, not on the amount of land it owned." Clerk's Papers, at 472. It held: "The award of damages is reversed and remanded for trial on that issue alone. In all other respects, the judgment is affirmed." Clerk's Papers, at 473.

The defendant contends, and the Court of Appeals agreed, that on retrial the mandate limited the amount of damages to the loss occurring solely from the amount of seed purchased. What both the defendant and the Court of Appeals ignore is the fact that by the time of the second trial, the facts had changed. Because of the damage to its business reputation, plaintiff faced an estimated cost of $1 million to correct the bad sod resulting from defendant's defective seed. It must be remembered that it is an established fact, affirmed in the first appeal, that defendant did breach its warranties. By the time of the second trial, plaintiff had sold its sod operation.

Had the evidence at the second trial proceeded on the same theory of lost profits, there might be some merit to the defendant's position. However, because the sale of the business had occurred, plaintiff rightfully presented evidence based on its theory of a loss in value of its business because of the conceded damage to its business reputation. The unexcepted to damages instruction makes clear that it was this alternative theory which was submitted to the jury. Defendant effectively concedes this point for it states:

> Plaintiff's damage evidence in this case consisted of *an entirely new theory* and an *entirely new set* of assumptions and calculations. *The issue presented here* — whether in light of plaintiff's damage evidence Scott was entitled to an instruction that plaintiff's damage must be proved with reasonable accuracy — *could not have been decided in the first appeal.*

(Italics ours.) Reply Brief of Appellant, at 20-21.

On the second appeal, Judge Worswick summarily asserted that the loss on the sale of the business was the same theory of lost profits used in the first trial. His conclusions are unrelated to the record in the second trial. The fundamental error in this second opinion is illustrated by Judge Worswick's holding:

> The damages in a case such as this, where the grower purchased seed that produced a poor crop, is the net profit from the crop that would have been raised that season had the seed been as ordered. *Nakanishi v. Foster*, 64 Wn.2d 647, 659, 393 P.2d 635 (1964). Our opinion disposing of the first appeal relied on this principle.

By that statement and its reliance on *Nakanishi*, the Court of Appeals reveals the defect in its rationale. *Nakanishi* concerned the loss of a crop of lettuce, an annual crop. The production of sod is an entirely different matter. It is "planted" at the customer's home or commercial property and is expected to grow continuously thereafter. The damage rule relating to annual crops simply has no relevance to this case.

■ Plaintiff is solidly correct in asserting in its petition for review that the Court of Appeals invaded the province of the jury. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 645, 771

P.2d 711, 780 P.2d 260 (1989). Given the fact that there was contested evidence sufficient to go to the jury, the Court of Appeals did not have the constitutional right to substitute its evaluation and weighing of the evidence for that of a properly instructed jury.

While defendant did not specifically cross-petition for review, it attempts to raise two issues in its response to the petition for review. They are raised conditionally, *i.e.*, only if the petition were granted. RAP 13.7(b).

■ First, defendant claims error in refusing to give one of its requested jury instructions. In its opening brief it does not set out its proposed instruction nor does it refer to it by number. This omission violates RAP 10.4(c). When the fact of that omission was raised by respondent, defendant still did not set out in its reply brief the proposed instruction. Rather, it quotes from the transcript showing the exception taken. The only clue from the transcript as to what defendant requested is the following: "Mr. Lybeck: Except to the Court's failure to give our proposed No. 16. It reads: That further, Plaintiff has the burden of proving with reasonable accuracy." VRP vol. 9, at 1520-21. There are several reasons why we will not consider this claimed error. First, neither brief, nor the response to the petition for review, complies with the mandatory requirement of RAP 10.4(c).

Second, if the above quote is an accurate statement of what the requested instruction contained, it certainly is a meaningless statement.

Even when defendant's proposed instruction 16 was examined in the Clerk's Papers, we find that it relates to a statute and not to damages. Clerk's Papers, at 355.

We do not consider error when presented with such inaccurate and incomplete briefing.

Finally, defendant argues that it was prevented from showing that some or all of plaintiff's damages were not caused by the breach of warranty. Defendant argues that the trial court ruled that defendant "was not entitled to show that any of the weeds in Lewis River's VBB fields

resulted from anything other than the breach of warranty". Response to Petition for Review, at 8.

The first difficulty is that defendant does not show an offer of proof so that we can determine exactly what evidence it wanted to introduce. We are aware that an offer of proof was discussed with the trial court, and the *trial court* was aware of defendant's purpose. VRP vol. 2, at 252. Without such an offer of proof, an appellate court is severely handicapped in reviewing the record, regardless of what the trial court understood.

Nonetheless, while we need not do so, we have reviewed what is available. The trial court considered the matter on numerous occasions. The trial court allowed evidence of plaintiff's reputation, other reasons why customers were lost, what it should have done to mitigate or cover its losses, and evidence that its owner was a poor businessman. VRP vol. 2, at 244-56. Defendant in fact did introduce evidence to suggest other causes of plaintiff's damages, *e.g.*, late delivery, other inferior product, and failure to remedy complaints promptly. VRP vols. 3, 8, 2, at 284-85, 1274-78, 100, 104.

What the trial court did not permit was for the defendant to go behind the present record and retry the liability for breach of warranty which had been affirmed "in all respects" by the Court of Appeals.

In the first appeal, where liability was established and affirmed, the trial court instructed that the breach of warranty had to be a proximate cause of plaintiff's damage which plaintiff could not reasonably have prevented. Thus, the issue of cause had been litigated and foreclosed from retrial in the second case. We will not second guess this exercise of discretion by the trial court. It appears entirely correct that the remand was limited to damages proximately caused by the established breach of warranty. The jury was so instructed, and there was no error in the evidentiary rulings.

The Court of Appeals is reversed to the extent that it vacated part of the jury verdicts. The Court of Appeals is affirmed to the extent that it affirmed part of the jury

verdicts. Thus, the judgment in the trial court is affirmed in its entirety.

DORE, C.J., and UTTER, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.