IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPECIALTY ASPHALT & CONSTRUCTION, LLC, a Washington limited liability company, and Lisa Jacobsen, individually, | ) ) ) ) ) ) | No. 34480-1-III |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| COUNTY OF LINCOLN, a Washington State County, | ) ) ) | |
| Respondent. | ) ) | |

KORSMO, J. — Specialty Asphalt appeals from the dismissal of its case at summary judgment. We agree with the trial court that appellants failed to establish that any disparate treatment harmed them and, therefore, affirm.

FACTS

Specialty Asphalt and its majority owner, Lisa Jacobsen, are the appellants. Specialty was the successful bidder on a project to pave a parking lot at the Lincoln County Courthouse. Problems developed early in the bid letting process.

Specialty responded in July 2013 to a Notice of Call for Bid issued by Lincoln County requesting repair and maintenance on the parking lot at the courthouse in

Davenport. The county's permit coordinator, Phil Nollmeyer, prepared the bid notice. It mistakenly stated in two places that no proposal bond or performance bond was required.

Ms. Jacobsen was the only person to appear for the public walkthrough of the project. Several county representatives, including Mr. Nollmeyer and the three county commissioners, participated. Mr. Nollmeyer apparently[1] commented that the heeled shoes worn by Ms. Jacobsen were not the most appropriate footwear for the outing. In response to comments made by Ms. Jacobsen, the Bid Notice was amended. However, there still was no bond requirement in the amended notice.

Mr. Nollmeyer subsequently gave a representative of Arrow Concrete & Asphalt a private walkthrough at a later date following the public walkthrough. Mr. Nollmeyer testified that a representative from Arrow simply showed up and Nollmeyer showed him the project location so that Arrow could prepare a bid. Prior to the due date for the bid, Nollmeyer allegedly called Ms. Jacobsen on the phone and attempted to talk her out of placing a bid. Ms. Jacobsen believed that Nollmeyer thought a woman could not do the job.

Specialty submitted a bid on July 27, 2013 that did not include a bond. The county also received a bid from Arrow. The Specialty bid was approximately $15,000

---

[1] While we understand that the county does not agree with all of the factual allegations, we recite the facts in the light most favorable to Specialty since it was not the moving party at summary judgment.

less than Arrow's.[2] Specialty was awarded the project. Ms. Jacobsen learned that fact when she called the county to find out the results and was told that Mr. Nollmeyer should have called her already. A letter arrived from Nollmeyer the next day advising her that Specialty had won the bid. Specialty began mobilizing its resources for the job and turned down other potential business.

The county sent an award letter to Specialty that included a contract and a contract bond. Specialty signed and returned the contract, but returned the bond unsigned after reminding the county that the Bid Notice had not required a bond. The county declined to sign the contract and the county auditor notified Ms. Jacobsen that the bidding process would be terminated due to the bond requirement mistake. County Commissioner Scott Hutsell spoke with Ms. Jacobsen and promised to work with the company.

Specialty objected to the bond requirement and alleged that the county was only seeking the bond because Specialty was owned by a woman.[3] The county offered to cover the cost of the bond if Specialty obtained one. Specialty refused to do so on the advice of its insurance agent because it could expose Specialty to investigation by the United States Department of Transportation.

---

[2] Our record does not indicate whether or not the Arrow bid included a bond.

[3] Specialty also alleged that the county began tracking its contractor's bond on an ongoing basis after the bid award because it was trying to find a reason to terminate the contract. The county also checked on Arrow, but did not monitor its bond.

Specialty filed suit against the county on May 12, 2014, asking for injunctive and declaratory relief. It sought to prevent the county from going forward with another contractor. Specialty also sought a declaration that it could go forward without using a bond and a declaration that the county's offer to pay bond costs did not constitute bid-rigging. After some discovery, Specialty was allowed to amend its complaint to add Ms. Jacobsen as a party and to raise claims of gender discrimination and negligent misrepresentation.

The county moved for summary judgment in mid-December 2015. Ms. Jacobsen responded with an affidavit stating the facts (noted above) supporting her claim of gender discrimination. The county moved to strike hearsay contained within the declaration. The county also later filed a motion to compel Specialty to perform its contract obligations or to dismiss its contract claims.

The court partially granted summary judgment on February 5, 2016, striking the gender and negligent misrepresentation claims, but finding that factual questions prevented dismissal of the contract-based claims. The court also granted the motion to strike hearsay except as to statements made by Mr. Nollmeyer. After the court permitted the contract claims to go forward, the county conceded the contract issue and stipulated to Specialty completing the contract without a bond.

Specialty then moved the court to allow it to amend its complaint a second time to obtain an award of damages for breach of contract. On April 1, the superior court denied

4

the motion to amend. The court ruled that amendment would be futile because money damages are not available in public works cases prior to the completion of the contract; only after completion may an aggrieved contractor bring suit for damages. Meanwhile, the county made a second motion to compel specific performance or dismiss the lawsuit.

Specialty sought reconsideration on the ruling denying the amendment. The court denied reconsideration. Pursuant to the contract, Specialty then filed a notice of inability to perform the work. The court then granted the county's motion to compel the work without the bond. Specialty declined to perform the project and the trial court dismissed the case as moot.

Specialty appealed to this court. A panel heard oral argument.

ANALYSIS

This appeal requires review of the summary judgment ruling and the dismissal of the contract claim, as well as a challenge to the court's ruling striking part of Ms. Jacobsen's affidavit.[4] Since at least one element was missing from each of the claims, the trial court properly dismissed the action.

---

[4] Appellant also contends that the trial court erred in denying reconsideration. Since we conclude that the claims were properly dismissed, we decline to address the reconsideration argument.

*Summary Judgment*

Both the gender discrimination and negligent misrepresentation claims were dismissed at summary judgment. We consider those claims in the order stated, along with the argument that the trial court erred in striking portions of the affidavit.

Well settled standards govern our review. Summary judgment is proper when the moving party bears its initial burden of establishing that it is entitled to judgment because there are no disputed issues of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989), *overruled on other grounds by* 130 Wn.2d 160 (1996). "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). If that initial showing is made, then the burden shifts to the other party to establish there is a genuine issue for the trier of fact. *Young*, 112 Wn.2d at 225-226. The responding party may not rely on speculation or having its own affidavits accepted at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). Instead, it must put forth evidence showing the existence of a triable issue. *Id.* The evidence must be admissible. CR 56(e) (affidavits "shall set forth such facts as would be admissible in evidence").

*Gender Discrimination*

An independent contractor who is discriminated against in the making or performance of a contract for employment because of her sex has a cause of action for affirmative relief and for damages under RCW 49.60.030. *Marquis v. City of Spokane,*

6

130 Wn.2d 97, 115, 922 P.2d 43 (1996). In an action for discrimination in the making and performance of an employment contract, the plaintiff must show (1) membership in a protected class, (2) plaintiff was similarly situated to members of the opposite sex, (3) because of plaintiff's sex she was treated differently than members of the opposite sex, *i.e.* she was offered a contract only on terms that made the performance of the job more onerous or less lucrative than contracts given to members of the opposite sex, or, once offered the contract, was treated in a manner that made the performance of the work more difficult than that of members of the opposite sex who were similarly situated. *Id.* at 113-114; *Ellingson v. Spokane Mortg. Co.*, 19 Wn. App. 48, 54, 573 P.2d 389 (1978). The plaintiff has the burden of establishing specific and material facts to support each element of his or her prima facie case. *Ellingson*, 19 Wn. App. at 54.

Even assuming the first two elements of a discrimination claim, appellant's action foundered on the third prong for a couple of different reasons. First, it is difficult to see how the perceived differences in treatment occurred because of Ms. Jacobsen's gender since there was no evidence that Arrow was treated differently. The group walkthrough that she participated in cannot be disparate treatment; it was advertised and available for any potential bidders to take part in. Even if one wants to interpret the later visit by Arrow's representative as special treatment of Arrow, it does not establish disparate treatment of Specialty in the absence of evidence that Specialty was denied a similar opportunity.

7

Similarly, the comment on Ms. Jacobsen's heels being inappropriate for a jobsite and the telephone call discouraging her from bidding do not establish disparate treatment due to gender. There is no information concerning whether Arrow's representatives received similar or different treatment. For all this record shows, Mr. Nollmeyer also may have discouraged Arrow from bidding and commented on the footwear worn by its representative.

The second reason that the arguments are unavailing is that the alleged disparate treatment did not cost Specialty the bid—it still won. That fact is also the reason that the repeated checking on Specialty's licensing after the award of the bid is not evidence of disparate treatment. After the bid was awarded, there was no competing "class" to compare treatment with; a winning bidder and a losing bidder are no longer similarly situated in the same "class." Instead, the county faced a winning bidder who had not accepted the contract offered (with a bond). Specialty was in a class by itself and whatever scrutiny it was receiving was not disparate with respect to another similarly situated entity. There were none.

Specialty likewise has not shown that the phone call or the heel comments or any of the other instances of disparate treatment affected it in any manner. There was no increase in costs or delay in processing of the bid due to the alleged behavior. Similarly, there is no suggestion that the license monitoring somehow affected the ability to perform the contract or otherwise imposed burdens on Specialty. The disparate treatment did not

make performance of the job more onerous or less lucrative, nor did it make performance of the contract more difficult.

The trial court correctly determined that the third element of the gender discrimination claim was not established by the identified instances of disparate conduct. Summary judgment was properly granted.

*Negligent Misrepresentation*

The court also dismissed the negligent misrepresentation claim at summary judgment. Special claims that material factual disputes precluded summary judgment, while the county argues that the claim failed because of both the public duty doctrine and Specialty's failure to prove an element of its cause of action. We agree with the latter contention and do not consider the public duty argument.

Washington's adoption of the tort of negligent misrepresentation is based on the *Restatement (Second) of Torts* § 552 (1977). To establish the elements of that tort, one must establish:

> A plaintiff claiming negligent misrepresentation must prove by clear, cogent, and convincing evidence that (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages. . . . Moreover, the plaintiff must not have been negligent in relying on the representation.

*Ross v. Kirner*, 162 Wn.2d 493, 499-500, 172 P.3d 701 (2007) (internal citations omitted).

Commentary on the *Restatement* recognizes that liability is based on negligence of the actor in failing to exercise reasonable care or competence in supplying correct information. RESTATEMENT § 552, cmt. a. Under the *Restatement*, damages for negligent misrepresentation are limited to "those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is a legal cause." RESTATEMENT § 552B. "Recovery of damages for the benefit of the plaintiff's contract with the defendant is specifically not allowed under the Restatement." *Janda v. Brier Realty*, 97 Wn. App. 45, 50, 984 P.2d 412 (1999).

The plaintiff must establish the evidence proving damages with enough certainty to provide a reasonable basis for estimating it. *Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993) (citing *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 16, 390 P.2d 677, 396 P.2d 879 (1964)). Although the precise amount of damages need not be shown, damages must be supported by competent evidence in the record; to be competent, the evidence or proof of damages must be established by a reasonable basis, and it must not subject the trier of fact to mere speculation or conjecture. *Fed. Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 443, 886 P.2d 172 (1994); *Lewis River Golf*, 120 Wn.2d at 717-718 (requirement of reasonable certainty applies more to the fact of damages than to the amount of damages).

While the parties have genuine factual disputes concerning other elements of the tort, this case fails on the damages element. Specialty did not establish damages because the county first agreed to cover the cost of the bond and later rescinded the need for the bond, removing the potential pecuniary damage caused by the county's original insistence on a performance bond. *See* RESTATEMENT § 552B. Ultimately, prior to completion of the contract, Specialty had not been damaged. *Lewis River Golf*, 120 Wn.2d at 717. The *Restatement* provides an on-point example concerning liability for providing incorrect information. In that circumstance, damages occur when the plaintiff suffers "pecuniary loss *in performing their contracts*." RESTATEMENT § 552 cmt. h, illus. 9 (emphasis added). As Specialty never performed on the contract, it was not damaged in the sense recognized by this tort.

The court correctly dismissed the negligent misrepresentation claim at summary judgment.

*Evidentiary Ruling*

Specialty also argues that the trial court erred in striking portions of Ms. Jacobsen's declaration on hearsay grounds. If the court erred in this regard, the stricken materials did not prejudice Specialty.

In its ruling, the trial court denied the motion to strike statements attributed to Mr. Nollmeyer, but granted the motion to strike other hearsay in Ms. Jacobsen's affidavit. On appeal, Specialty challenges the ruling as to statements made by the auditor and a county

11

commissioner, both of whom Specialty alleges are speaking agents for the county.

Specifically, the affidavit states that Ms. Jacobsen spoke with:

> Lincoln County Commissioner Scott Hutsell about the award that Specialty Asphalt had received. Commissioner Hutsell understood that the Bid Proposal had affirmatively represented that the county was not requesting a bond for the Project and that a bidder, such as Specialty Asphalt, must formulate its bid on the items that the county identifies in the Bid Proposal. He described the situation as a mess. Commissioner Hutsell assured me that the county would not let this go bad for Specialty Asphalt and that he would investigate the available options that would enable the Project to go forward with my company. He graciously expressed his appreciation for contractors that showed an interest in coming to perform work in Lincoln County.

Clerk's Papers at 287.

Assuming that the hearsay attributed to Mr. Hutsell, as well as that attributed to Shelly Johnston, the auditor, should have been admitted, the error was of no moment. Commissioner Hutsell reiterated that the bid did not include a request for a bond on the project, a fact the county never denied. The commissioner described the situation as "a mess," an opinion that no one denies. If Commissioner Hutsell assured Ms. Jacobsen that the county "would not let this go bad for Specialty" and that "he would investigate the available options that would enable the Project to go forward" with Specialty, it is unclear how striking these statements was prejudicial to Specialty, as the statements address Specialty's contract claim, which survived summary judgment.

Similarly, the auditor's statements involved an undisputed position—Lincoln County was asking for a bond even though the bid proposal did not call for one. If the

court actually disregarded those statements, they were cumulative to Ms. Jacobsen's own testimony on the topic, something the court was required to consider and undoubtedly had done. Additionally, as with Hutsell's statements, the Johnston statements primarily went to the contract claim and were cumulative on the misrepresentation claim.

Any error in striking these statements was harmless because they did not impact the summary judgment ruling.

### Contract Claims

Finally, Specialty claims that the court erred in dismissing the contract action and in refusing to permit it to further amend the complaint to assert a claim for damages due to breach of contract. Since both arguments fail for the same reason, we address them together.[5]

It long has been settled that the exclusive remedy for an aggrieved bidder on a public works contract is injunctive relief. *Mottner v. Town of Mercer Island*, 75 Wn.2d 575, 579-580, 452 P.2d 750 (1969). The controlling case is our decision in *Skyline Contractors. Inc. v. Spokane Housing Authority*, 172 Wn. App. 193, 204, 289 P.3d 690 (2012). There the Spokane Housing Authority (SHA) awarded a public works contract to Skyline. *Id.* at 197-198. Soon afterwards, SHA withdrew its offer based on the failure of

---

[5] A trial court may appropriately deny a motion to amend if an amended claim is futile. *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 142, 937 P.2d 154, 943 P.2d 1358 (1997). It is for that reason that we will not separately address the argument that the court erred in failing to grant the amendment.

Skyline to produce a required piece of documentation on its subcontractors. *Id.* at 198. In withdrawing its bid, SHA pointed to specific terms of the invitation for bids that Skyline either violated or failed to satisfy, related to Skyline's agreements with its subcontractors. *Id.* at 199. This court held that the exclusive remedy for Skyline was to seek an injunction to prevent SHA from awarding the contract to another bidder. As Skyline elected not to pursue this exclusive remedy, summary judgment of Skyline's claim for damages was appropriate. *Id.* at 207.

In contrast, damages for breach of contract are available when the contractor has performed its duties under the agreement. *Scoccolo Const., Inc. ex rel. Curb One, Inc. v. City of Renton*, 158 Wn.2d 506, 509, 145 P.3d 371 (2006). Scoccolo Construction, unlike Specialty, did not sue the City of Renton until *after* completion of the project. *Id.* at 512.

The trial court correctly reasoned that this case was closer to the *Skyline* fact pattern. Specialty sought the authorized relief for a bidder—an injunction to prevent anyone else from performing the project. It received that relief. Indeed, the county ultimately conceded that point. Accordingly, the trial court found for Specialty.

Rather than proceed with the contract and then subsequently seek any damages caused by the delay, Specialty chose not to proceed with the project. The trial court correctly concluded that the case was now moot. Specialty had won its relief and there was nothing left since the other counts were dismissed at summary judgment. There also

was no basis for amending the complaint to seek breach of contract damages since Specialty had not performed the contract.

There was no justiciable controversy remaining. *See Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 186, 157 P.3d 847 (2007). The matter was properly dismissed.

Finally, both parties seek attorney fees on appeal. Specialty did not prevail in this appeal, so there is no basis for granting its request. Although the county seeks fees on the basis that the appeal was frivolous, we disagree with that characterization. Specialty had legitimate arguments on appeal that presented debatable issues, even if none of them succeeded. The appeal was not frivolous and the county is not entitled to attorney fees.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

15