# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MADERO CONSTRUCTION, LLC, a Washington limited liability company,<br><br>Respondent,<br><br>v.<br><br>FULLWILER CONSTRUCTION, INC., a Washington corporation; 2217 NW 62nd ST, LLC, a Washington limited liability company; MERCHANTS BONDING COMPANY (MUTUAL), a surety; FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF PORT ANGELES, a Washington Bank Corporation; THE OHIO CASUALTY INSURANCE COMPANY, a surety,<br><br>Appellants. | No. 86281-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Fullwiler Construction, Inc. (Fullwiler) appeals the trial court's award of damages to Madero Construction, LLC (Madero) on Madero's breach of contract claim and its dismissal of Fullwiler's negligent misrepresentation counterclaim. We affirm.

I

In June 2021, Fullwiler was the general contractor for a townhome construction project in Ballard (the Ballard Project). Its sole shareholder, Jerry

Fullwiler (referred to herein by his full name to avoid confusion with Fullwiler), asked Jose Ulloa, the owner of Madero, to perform framing work on the townhomes as a subcontractor. On July 6, Madero began working on the Ballard Project, and Jerry Fullwiler signed a Trade Contractor Agreement (TCA) memorializing the parties' agreement.

The next day, Fullwiler's office manager, Mallorie Hefley, e-mailed Ulloa the TCA and a "starter packet" with two attached addenda regarding insurance coverage (Addenda A and B) and asked him to complete, sign, and return the documents to her. The TCA required Madero to maintain insurance during the contract period for claims arising out of the work and provide Fullwiler with a certificate of insurance. Ulloa filled out and signed the contract documents and returned them to Hefley. Unbeknownst to Fullwiler, Madero's insurance policy had an exclusion for "newly built residential construction," which applied to the Ballard Project. Ulloa did not notify Fullwiler of this exclusion, nor did he supply a certificate of insurance to Fullwiler.

Madero's laborers were initially supervised by Fullwiler's assistant superintendent, Jacob Minzghor. In mid-July, Ulloa advised Minzghor that certain aspects of the approved building plans were internally inconsistent. To resolve this issue, Minzghor instructed Ulloa to construct the roofs in a manner that deviated from the approved building plans. Madero continued constructing the roofs per Minzghor's instructions for several weeks. Then, on August 11, a replacement superintendent noticed the roofs were not being constructed according to the approved building plans. Madero's laborers worked over a period

of approximately two weeks, at Fullwiler's direction, to tear down the framing and reconstruct it according to the approved building plans.

While Madero was reconstructing the roofs, Fullwiler refused to pay invoice #896008 (Invoice 8), in the amount of $50,172.57, submitted by Madero on August 16 for work it performed between August 2 and August 13. Madero then sent a "notice of default" to Fullwiler on September 1 that referenced Invoice 8 and "a second invoice, #896009 [Invoice 9], dated August 28, 2021 for $64,738.80." On September 2, Madero ceased working on the Ballard Project. It then generated its final invoice, Invoice #896010 (Invoice 10), totaling $17,880.24, for work it performed after August 28. Madero also recorded a mechanic's lien on September 13, stating the "[p]rincipal amount for which the Lien is claimed is . . . $132,791.61," which is the total of the foregoing invoices ($50,172.57 + $64,738.80 + $17,880.24).

In March 2022, Madero filed a complaint against Fullwiler alleging breach of contract and seeking damages totaling $132,791.61.[1] In response, Fullwiler asserted counterclaims alleging Madero breached the parties' contract by performing faulty and defective work and negligently misrepresented the extent of its insurance coverage. Following a bench trial, the court found (a) Madero did not breach the contract by performing faulty or defective work because it was instructed by Fullwiler's agent to deviate from the approved building plans, (b)

---

[1] Madero's complaint also named as defendants the property owner (2217 NW 62nd St., LLC) and two sureties (Merchants Bonding Company (Mutual) and The Ohio Casualty Insurance Company). This opinion refers to these defendants collectively as "Fullwiler" because they filed a joint appellate brief in which they collectively refer to themselves as "Fullwiler Construction," are represented by the same counsel, and have otherwise acted in concert throughout this litigation. A fifth defendant, First Federal Savings & Loan Association of Port Angeles, was voluntarily dismissed.

Fullwiler breached the contract by failing to pay Madero for all the work it performed on the Ballard Project through September 2, 2021, and (c) Fullwiler had failed to establish its negligent misrepresentation claim. Turning to the amount of Madero's damages, the trial court found Madero "did sufficiently demonstrate (albeit by a thin reed) that Madero was deprived of a total of $132,791.61 ($50,172.57 + $64,738.80 + $17,880.24) due to Fullwiler Construction's refusal to pay the invoices." Fullwiler appeals.

II

A

Fullwiler argues Madero "never offered evidence or testimony" regarding Invoices 9 and 10 and therefore "failed to prove with substantial evidence $82,619.04 of $132,791.61 of its claimed damages (62 percent), that were wrongfully awarded by the trial court." We disagree.

"The general measure of damages for breach of contract is that the injured party is entitled to (1) recover all damages that accrue naturally from the breach and (2) be put into as good a pecuniary position as [the injured party] would have had if the contract had been performed." *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 729, 281 P.3d 693 (2012). While damages must be proved with reasonable certainty, this certainty requirement "'is concerned more with the *fact of damage than with the extent or amount of damage*.'" *Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993) (quoting *Gaasland Co., Inc. v. Hyak Lumber & Millwork, Inc.*, 42 Wn.2d 705, 712-13, 257 P.2d 784 (1953)). As to the amount of damage, "'Evidence of damage is sufficient

if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" *Clayton v. Wilson*, 168 Wn.2d 57, 72, 227 P.3d 278 (2010) (quoting *State v. Mark*, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984)).

Where a trial court has weighed the evidence and entered findings of fact, as the trial court did in this case, "we review the trial court's factual findings for substantial evidence to support them." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wn. App. 474, 497, 254 P.3d 835 (2011). "'Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *Id.* (quoting *Brin v. Stutzman*, 89 Wn. App. 809, 824, 951 P.2d 291 (1998)). "There is a presumption in favor of the trial court's findings, and the party claiming error has the burden of showing that a finding of fact is not supported by substantial evidence." *Id.* Lastly, we "defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses." *Id.*

Substantial evidence supports the trial court's damages award. Contrary to Fullwiler's argument that Madero "never offered evidence or testimony" regarding Invoices 9 and 10, the record establishes the amount of both invoices. The trial court admitted as exhibit 60—without objection from Fullwiler—the notice of default Madero sent to Fullwiler on September 1, 2021 referencing the $50,172.57 requested in Invoice 8 and "a second invoice," referring to Invoice 9, "dated August 28, 2021 for $64,738.80." The trial court also admitted as exhibit 14—again without objection from Fullwiler—the mechanic's lien Madero recorded on

September 13, 2021 stating it "perform[ed] labor, provide[d] professional services, [and] suppl[ied] material or equipment" at the site of the Ballard Project from July 6 to September 2, 2021, and the "[p]rincipal amount for which the Lien is claimed is . . . $132,791.61."[2]

The trial court's damages award is also supported by exhibit 151, a spreadsheet entitled "Madero Construction Billing Summary," which the trial court admitted for demonstrative purposes. While demonstrative evidence "is not itself evidence," it is nonetheless "appropriate to aid the trier of fact in understanding other evidence, where the trier of fact is aware of the limits on the accuracy of the evidence." *State v. Lord*, 117 Wn.2d 829, 855-56, 822 P.2d 177 (1991), *overruled on other grounds by State v. Schierman*, 192 Wn.2d 577, 438 P.3d 1063 (2018). Where, as here, an exhibit is admitted for demonstrative purposes, the fact finder is "free to judge the worth and weight of the evidence." *Id.* at 855-56.

Consistent with these legal principles, the trial court properly relied on exhibit 151, along with the evidence it summarizes, in determining Madero's damages for its breach of contract claim. The exhibit is a detailed spreadsheet listing the invoices Madero submitted to Fullwiler for its work on the Ballard Project. The spreadsheet indicates Invoice 9 pertains to work Madero performed from "8/16 – 8/28/21" in the amount of "$64,738.80," Invoice 10 pertains to work Madero performed from "8/31 – 9/2/21" in the amount of "$17,880.24," and the unpaid Invoices 8, 9, and 10 total "$132,791.61." These amounts match those reflected

---

[2] While we agree with Fullwiler's assertion at oral argument that exhibits 14 and 60 are not substantive evidence of liability, they are additional evidence regarding the *amount* of Madero's damages (the issue before us on appeal) and we consider them solely for that purpose.

on exhibits 14 and 60—which were admitted as substantive evidence—with respect to Invoice 9 and the total of the three unpaid invoices, respectively. Additionally, Fullwiler prepared and offered exhibit 151 for use during trial, and Hefley (its Chief Operations Officer at the time of trial) testified she was involved in creating the exhibit and had "reviewed it for accuracy."

These circumstances are markedly different from those in *Owens v. City of Seattle*, 49 Wn.2d 187, 299 P.2d 560 (1956), which Fullwiler cites in support of its argument. The Supreme Court in *Owens* held that the trial court erred in admitting a chart and map summarizing data collected from the scene of an automobile accident because there was no "preliminary testimony as to the accuracy of the data upon which the exhibits were based, submitted by someone who could have been cross-examined." *Id.* at 194. Here, in contrast, Hefley (Fullwiler's own employee) testified regarding the preparation and accuracy of exhibit 151, and Fullwiler could cross-examine her (among other witnesses) regarding her testimony that the amounts reflected on the exhibit were accurate. Unlike the trial court in *Owens*, the trial court in this case did not err in relying on exhibit 151, along with exhibits 14 and 60 and Hefley's testimony, in awarding $132,791.61 as damages for Madero's breach of contract claim.

Fullwiler argues the trial court's finding that "Fullwiler Construction did not put on evidence that Invoices [9 and 10] were inaccurate" constitutes improper burden-shifting. While Fullwiler correctly observes that the party seeking damages bears the burden of proving them, *224 Westlake*, 169 Wn. App. at 729, the trial court's finding is not to the contrary; rather, the finding was merely an observation

that Fullwiler failed to contest the accuracy of exhibit 151. As the next sentence of the finding clarifies, "Hefley conceded the amounts in question[] for those two periods were accurate." In this context, the trial court was referring to Fullwiler's failure to undermine the weight of Madero's evidence supporting the amount of its damages once it satisfied its burden of proving the fact of damage.

Lastly, Fullwiler cites two cases rejecting conclusory damages awards, but both cases are distinguishable. In *Mutual of Enumclaw Insurance Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 723-24, 315 P.3d 1143 (2013), a jury awarded $1.5 million for tortious interference with a business relationship where the only evidence quantifying the claimant's injury was an interrogatory response stating it was seeking "$10,000 in reputation damages." And in *Hardcastle v. Greenwood Savings and Loan Ass'n*, 9 Wn. App. 884, 888, 516 P.2d 228 (1973), we held that the trial court erred in entering a finding as to damages where "[a] review of the evidence shows that this finding is supported at most only by highly speculative testimony." In sharp contrast to the damage claims in these cases, Madero's damages could be calculated with precision, and there is evidence from which the trier of fact could calculate these damages without resorting to speculation. The trial court's damages award is neither legally nor factually flawed.[3]

---

[3] Fullwiler repeats many of the above arguments in a statement of additional authority submitted following oral argument. Madero has filed a motion to strike the statement. As this court has previously explained, "the 'purpose of RAP 10.8 is to provide parties with an opportunity to bring to the court's attention cases decided after the parties submitted their briefs.'" *City of Edmonds v. Edmonds Ebb Tide Ass'n of Apt. Owners*, 27 Wn. App. 2d 936, 945 n.2, 534 P.3d 392 (2023) (quoting *Whitehall v. Emp't Sec. Dep't*, 25 Wn. App. 2d 412, 419 n.3, 523 P.3d 835 (2023)). Despite our admonition in *City of Edmonds*, Fullwiler's statement of additional authority does not cite or discuss any such cases. We therefore grant the motion to strike the statement and decline to consider it.

B

Next, Fullwiler claims the trial court applied "the incorrect law on negligent misrepresentation" and its "finding on justifiable reliance is not supported by sufficient evidence." We disagree.

As noted previously, the trial court rejected Fullwiler's negligent misrepresentation claim based on the evidence presented at trial. In its findings of fact and conclusions of law, the trial court correctly recited the six-element test from *Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007), for establishing such a claim:

> (1) the defendant supplied information for the guidance of others in their business transactions that was false, (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in his business transactions, (3) the defendant was negligent in obtaining or communicating the false information, (4) the plaintiff relied on the false information, (5) the plaintiff's reliance was reasonable, and (6) the false information proximately caused the plaintiff damages.

The trial court also noted, as *Ross* confirms, *id*., that these elements must be proven "by clear, cogent, and convincing evidence."

The trial court found (and Madero does not dispute on appeal) that Fullwiler satisfied the first four elements of a negligent misrepresentation claim. But the court found that Fullwiler had not proven the fifth element. The court explained, "Where the standard of proof is clear, cogent, and convincing evidence, the Court cannot find that Fullwiler Construction was free of negligence under these circumstances and that it reasonably relied on Madero's misrepresentations." Based on this finding, the trial court concluded Fullwiler had failed to prove its

negligent misrepresentation claim and did not reach the sixth and final element regarding proximate cause and damages.

Fullwiler argues the trial court's legal analysis is contrary to our Supreme Court's opinion in *Lawyers Title Insurance Corp. v. Baik*, 147 Wn.2d 536, 55 P.3d 619 (2002). The court there addressed whether to continue to apply contributory fault principles, rather than comparative fault principles, to negligent misrepresentation claims in accordance with section 552 of the Restatement (Second) of Torts (1977). Regarding that issue, the court held:

> We reject the applicability of section 552A to negligent misrepresentation claims in Washington. In *ESCA* [*Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 959 P.2d 651 (1998)], we held that RCW 4.22.005, the uniform comparative fault statute, applies to negligent misrepresentation claims. 135 Wash.2d at 831, 959 P.2d 651. In weighing that question, we observed that, "[b]y adopting comparative negligence, the harsh result of denying recovery was eliminated because the plaintiff's culpability was considered in determining total damages." *Id*. at 830, 959 P.2d 651. In light of our holding that comparative negligence applies to negligent misrepresentation claims, we believe that application of a contributory negligence bar to the "justifiable reliance" element would be confusing and contradictory. As we held in *ESCA*, "justifiable reliance" is properly defined for the jury as "'reliance [that] was reasonable under the surrounding circumstances.'" *Id*. at 828, 959 P.2d 651 (quoting CP at 1359 (Jury Instruction 17)). We see no clear-cut way to distinguish between a plaintiff's reasonableness in relying on a misrepresentation and a plaintiff's culpability in causing his or her own damages. We believe that, where a plaintiff reasonably reposes some trust in a misrepresentation and shows that that reliance proximately caused some damages, the automatic preclusion of a negligent misrepresentation claim on the grounds that the plaintiff could have done something more would be the sort of "harsh result" that the comparative fault statute sought to forestall in tort claims. *Id*. at 830, 959 P.2d 651. Thus, we hereby reject the applicability of section 552A to negligent misrepresentation claims and reaffirm our determinations in *ESCA* that reliance is justifiable if it is reasonable under the circumstances and that negligent misrepresentation defendants are not entitled to a jury instruction based on section 552A. *Id.* at 828, 959 P.2d 651.

*Baik*, 147 Wn.2d at 550-51 (internal footnote omitted). According to Fullwiler, the court in *Baik* "expressly rejected the notion that a plaintiff seeking to prove negligent misposition [sic] must be 'free of negligence.'"

Fullwiler misreads *Baik*. The court there did not eliminate the reasonable reliance element for establishing a negligent misrepresentation claim. To the contrary, the court explained that comparative fault principles apply *after* the plaintiff has established that element: "*[W]here a plaintiff reasonably reposes some trust in a misrepresentation* . . . the automatic preclusion of a negligent misrepresentation claim on the grounds that the plaintiff could have done something more would be the sort of 'harsh result' that the comparative fault statute sought to forestall in tort claims." *Id.* at 551 (quoting *ESCA*, 135 Wn.2d at 830) (emphasis added). The court also stated that, upon remand for a trial on Lawyers Title Insurance Corporation's negligent misrepresentation claim, "*If the jury finds justifiable reliance*, it may nevertheless reduce Lawyers Title's award proportionally upon a finding that the company was to some degree negligent in causing or increasing its own damages." *Id.* at 552 (emphasis added).

Confirming this approach, the Supreme Court's opinion in *ESCA* similarly distinguishes between "the issues of justifiable reliance (the right to recover) [and] damage (the proper amount of recovery)." 135 Wn.2d at 829. And following *Baik*, the court reiterated in *Ross* that "the plaintiff must not have been negligent in relying on the representation" to prove a negligent misrepresentation claim. 162 Wn.2d at 500. Here, the trial court correctly recited this principle from *Ross* and, applying the principle, stated it "cannot find that Fullwiler Construction was free of

- 11 -

negligence under these circumstances and that it reasonably relied on Madero's misrepresentations." In rejecting Fullwiler's claim on that basis, the trial court did not misapply the law on negligent misrepresentation.

Nor has Fullwiler persuaded us that "the trial court's findings on justifiable reliance are not supported by substantial evidence." To satisfy the fifth element of a negligent misrepresentation claim, the plaintiff must prove by clear, cogent, and convincing evidence that its reliance on the defendant's misrepresentation was "reasonable under the circumstances." *Baik*, 147 Wn.2d at 551. "The extent to which the representee must verify the truth of the representation, if he or she must do so at all, depends upon the circumstances of the case." *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 384, 745 P.2d 37 (1987). As noted previously, we review the trial court's findings regarding this issue for substantial evidence. *See supra* at 5. In doing so, there is a presumption in favor of the trial court's findings, and we defer to the trial court in resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. *Id.*

Substantial evidence supports the trial court's finding that Fullwiler's reliance on Madero's misrepresentations was not reasonable under the circumstances. Fullwiler had never worked with Madero before hiring it as the framing subcontractor on the Ballard Project. Based on the information Madero provided in its starter packet, Hefley believed that Madero began operating as a business "that same day." Also, Madero supplied incomplete information about its insurance. In Addendum A, Madero did not include its insurance company or a complete policy number, and Madero never provided a certificate of insurance.

Upon receipt of this incomplete information, Fullwiler, as the trial court noted, did not follow up with Madero to verify that its insurance policy covered the Ballard Project.

The record also shows that Fullwiler itself recognized the importance of obtaining complete insurance information from its subcontractors. The starter packet that Fullwiler provided to Madero stated, "Any subcontractor who fails to meet the requirements described in [Addendum B], regarding Certificates of Insurance, will be invoiced at the rate described in item 2 of [Addendum B]." Addendum B then clarified that if Madero did not maintain insurance covering the Ballard Project, Fullwiler would obtain such insurance on Madero's behalf and charge Madero for doing so. When Madero did not provide a certificate of insurance, Fullwiler failed to obtain insurance on Madero's behalf, which Hefley admitted was an "oversight." Substantial evidence supports the trial court's finding that Fullwiler did not prove by clear, cogent, and convincing evidence that its reliance on Madero's misrepresentations was reasonable under the circumstances.

Lastly, Fullwiler contends its failure to obtain a certificate of insurance from Madero did not render its reliance unreasonable because "there was nothing in a certificate of insurance that would have alerted Fullwiler Construction as to the 'newly built construction' exclusion contained in Madero's actual liability insurance policy that negated insurance coverage for the Ballard project." This argument is self-defeating; if a certificate of insurance would not have disclosed whether Madero was properly insured to work on the Ballard Project, then it was not

reasonable under the circumstances for Fullwiler to rely on Madero's representation that it had sufficient insurance—as specified in the contract documents—without asking for additional information verifying such coverage. The trial court's findings regarding Fullwiler's negligent misrepresentation claim are neither legally nor factually flawed.

III

Both parties request attorney fees on appeal pursuant to RAP 18.1 and the attorney fee provision in the TCA, which states, "The prevailing party shall have the right to collect from the other party its reasonable costs, necessary disbursements and attorneys' fees incurred in enforcing this Agreement."  If attorney fees are allowable in the trial court, the prevailing party may recover those fees on appeal.  *Aiken v. Aiken*, 187 Wn.2d 491, 506, 387 P.3d 680 (2017). Because the trial court correctly awarded fees in favor of Madero as the prevailing party at trial and Madero is also the prevailing party on appeal, we grant Madero's request for attorney fees on appeal subject to compliance with RAP 18.1 and deny Fullwiler's competing request.

Affirmed.

Feldman, J.

WE CONCUR:

Díaz, J.                                    Chung, J.

- 14 -